**Ronald VERGARA et al.,
Plaintiffs-Appellants,**

v.

**Robert E. HAMPTON, Chairman of the United States Civil Service Commission, et al., Defendants-Appellees.**

**No. 77–2101.**

United States Court of Appeals,
Seventh Circuit.

Argued April 18, 1978.

Decided Aug. 24, 1978.

Rehearing and Rehearing In Banc
Denied Oct. 27, 1978.

---

Kenneth P. Montgomery, Legal Assistance Foundation, Chicago, Ill., for plaintiffs-appellants.

Bruno Ristau, Dept. of Justice, Washington, D. C., for defendants-appellees.

Before PELL and TONE, Circuit Judges, and CAMPBELL, Senior District Judge.*

TONE, Circuit Judge.

In *Hampton v. Mow Sun Wong,* 426 U.S. 88, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976), the Court held that a Civil Service Commission regulation barring lawfully admitted resident aliens from the federal competitive civil service deprived those aliens of due process rights. In so holding, the Court assumed but did not decide that the same bar would not be unconstitutional if it were imposed by Congress or the President. The President then issued an executive order renewing the bar.[1] The question before us is the validity of that order. Two district courts, one deciding the *Mow Sun Wong* case on remand, and the other a three-judge court in the First Circuit, have held the order valid. *Mow Sun Wong v. Hampton,* 435 F.Supp. 37 (N.D.Cal.1977), appeal pending, 9th Cir., No. 77–2649; *Santin Ramos v. U. S. Civil Service Commission,* 430 F.Supp. 422 (D.P.R.1977) (District Judge Toledo, with Circuit Judge Campbell and District Judge Pesquera). We reach the same result.

Plaintiffs are three lawfully admitted resident aliens who allege that they wish to take civil service examinations for federal employment, one as an auditor, the second as an office assistant, and the third as a

* The Honorable William J. Campbell, Senior District Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

1. President Gerald R. Ford issued Executive Order 11935, 41 Fed.Reg. 37301, on September 2, 1976, three months after the Supreme Court handed down its *Mow Sun Wong* decision. The order amended Civil Service Rule VII, 5 C.F.R. § 7.4, to provide as follows:

(a) No person shall be admitted to competitive examination unless such person is a citizen or national of the United States.

(b) No person shall be given any appointment in the competitive service unless such person is a citizen or national of the United States.

(c) The Commission may, as an exception to this rule and to the extent permitted by law, authorize the appointment of aliens to positions in the competitive service when necessary to promote the efficiency of the service in specific cases or for temporary appointments.

carpenter. One of them has executed a declaration of intent to become a United States citizen. All aver that they are prepared to swear permanent allegiance to the United States. They allege that the executive order exceeds the President's constitutional and statutory authority and violates 42 U.S.C. § 1981 and the due process clause of the Fifth Amendment. Plaintiffs seek to represent a class consisting of all lawfully admitted aliens residing in Illinois who desire civil service employment. The District Court denied class status and, pursuant to defendants' motions to dismiss and for summary judgment, entered judgment against plaintiffs.[2]

In the executive order, the President stated that he was acting "[b]y virtue of the authority vested in [him] by the Constitution and statutes of the United States," including 5 U.S.C. §§ 3301 and 3302. The order is explained in identical letters of the same date, September 2, 1976, from the President to the Speaker of the House of Representatives and the President of the Senate, in which the President described the *Mow Sun Wong* case as stating "that either the Congress or the President might issue a broad prohibition against the em-

ployment of aliens in the civil service, but [holding] that neither the Congress nor the President had mandated the general prohibition contained in the regulations of the Commission."[3]

## I.

### Class Representation

■ The first question is whether the District Court properly refused to allow the action to proceed as a class action. Plaintiffs sought to bring the action on behalf of themselves "and all other nationals and citizens of foreign states living in Illinois who have been admitted into Illinois for permanent residence and who desire to apply and be eligible for appointment in the United States Civil Service." We hold that plaintiffs were entitled to a class determination in their favor.

■ The prerequisites to bringing a class action under Rule 23(b)(2), Fed.R. Civ.P., were established. The sole purpose of this action is to determine a legal question which is common to every member of the proposed class, who are in the same position with respect to that question as are plaintiffs.[4] It was unnecessary in circum-

---

**2.** The action was originally brought by plaintiff Vergara challenging the same Civil Service Commission regulation that was found invalid in *Mow Sun Wong.* The District Court dismissed the action. During the appeal from that order, *Mow Sun Wong* was decided by the Supreme Court, and this court therefore vacated the judgment of dismissal and remanded to the District Court. While the case was pending there the executive order in issue here was adopted. Plaintiffs Renteria and Alatorre then joined in the action, and an amended complaint challenging the executive order was filed.

**3.** The President further stated that he had concluded that

[I]t is in the national interest to preserve the long-standing policy of generally prohibiting the employment of aliens from positions in the competitive service, except where the efficiency of the service or the national interest dictate otherwise in specific cases or circumstances. It is also my judgment that it would be detrimental to the efficiency of the civil service, as well as contrary to the national interest, precipitously to employ aliens in the competitive service without an appropriate determination that it is in the national inter-

est to do so. Therefore, I am issuing an Executive order which generally prohibits the employment of aliens in the competitive service.

The President also referred to "existing statutes which often discriminate between citizens and categories of aliens with respect to various rights, duties, and benefits." He said that "statutes pertaining to the Federal employment of aliens further discriminate as to specific jobs, agencies, or the nationality of aliens." He also stated that he was "mindful that the Congress has the primary responsibility with respect to the admission of aliens into, and the regulation of the conduct of aliens within, the United States," and that although he was exercising the "constitutional and statutory authority vested in [him] as President," he urged that Congress promptly address the matter.

**4.** Although the class description does not limit the class to those who have filed declarations of intent to become citizens or those who have declared their willingness to swear permanent allegiance, the executive order under attack does not make any distinction, and the United States does not seek to justify the order, on either of these bases. In these circumstances

stances such as these to establish that every member of the class "desired" to obtain Civil Service employment. *Cf. Sosna v. Iowa,* 419 U.S. 393, 397, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). The numerosity requirement was satisfied by the census figures as to resident aliens in Illinois and the number of federal Civil Service positions in that state.[5] *Cf. Senter v. General Motors Corp.,* 532 F.2d 511, 522–523 (6th Cir. 1976). The difficulty in determining the exact number of class members does not preclude class certification. *Doe v. Charleston Area Medical Center, Inc.,* 529 F.2d 638, 644–645 (4th Cir. 1975). *Cf. Jones v. Diamond,* 519 F.2d 1090, 1100 (5th Cir. 1975). Finally, whatever may be the rule elsewhere, *see Martinez v. Richardson,* 472 F.2d 1121, 1127 (10th Cir. 1973); *Ihrke v. Northern States Power Co.,* 459 F.2d 566, 572 (8th Cir.), *vacated on other grounds,* 409 U.S. 815, 93 S.Ct. 66, 34 L.Ed.2d 72 (1972), the rule in this circuit is that class certification may not be denied on the ground of lack of "need" if the prerequisites of Rule 23 are met. *Fujishima v. Board of Education,* 460 F.2d 1355, 1360 (7th Cir. 1975); *Vickers v. Trainor,* 546 F.2d 739, 747 (7th Cir. 1976). Accordingly, this action will proceed as a class action.

## II.

### *The President's Constitutional and Statutory Authority*

■ Plaintiffs' first ground of attack on the executive order is that issuance of the order was beyond the President's constitutional and statutory authority. We agree with Judge Peckham's answer to this same argument in his opinion on remand in the *Mow Sun Wong* case, *supra,* 435 F.Supp. at 41–42, *viz.,* that the question of authority was settled by the Supreme Court's opinion in that case.

redefinition of the class is unnecessary, although the result might be otherwise if during the course of the litigation either or both of these factors were to become relevant.

5. *U. S. Bureau of the Census Statistical Abstract of the United States: 1976* (97th ed.) Washington, D. C. 1976, at 109 and 252.

The controlling question in the Supreme Court's analysis in *Mow Sun Wong* was whether the national interests asserted by the government to justify the Civil Service Commission's citizenship requirement, 426 U.S. at 103–104, 96 S.Ct. 1895, were interests on which that agency could properly rely as a basis for that requirement, *id.* at 113–114, 96 S.Ct. 1895. The Court held they were not, *id.* at 114–116, 96 S.Ct. 1895, and that therefore the adoption of the citizenship requirement deprived the plaintiff aliens of a liberty interest without due process, *id.* at 116, 96 S.Ct. 1895.

In order to reach that controlling question, it was necessary to determine, *inter alia,* whether Congress had authorized the President, who had delegated his authority to Civil Service Commission, to adopt the citizenship requirement. The respondent aliens had argued in their brief in the Supreme Court that Congress had not so authorized the President. Brief for Respondent in *Hampton v. Mow Sun Wong,* 426 U.S. 88, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976), at 53, *et seq.* The Court held, 426 U.S. at 112–113, 96 S.Ct. 1895, that Congress had done so through 5 U.S.C. § 3301(1), which gives the President the authority to "prescribe such regulations for the admission of individuals into the civil service in the executive branch as will best promote the efficiency of that service." The President in turn had delegated the authority to the Commission.[6] If the Court had believed the statutory delegation to the President was insufficient to authorize the regulation, the case would presumably have been decided on that statutory ground, and the Court would not have reached the constitutional issue. *See Jalil v. Hampton,* 148 U.S.App.

6. Executive Order No. 10,577, § 2.1(a), 3 C.F.R. §§ 218, 219 (1954–1958 Comp.) The order authorized the Commission "to establish standards with respect to citizenship," *inter alia,* which the Court said was not necessarily a command to make citizenship a prerequisite but was at least equally "susceptible of interpretation as a command to classify positions for which citizenship should be required." 426 U.S. at 112, 96 S.Ct. at 1909.

D.C. 415, 419, 460 F.2d 923, 927, *cert. denied,* 409 U.S. 887, 93 S.Ct. 112, 34 L.Ed.2d 144 (1972) (question of Civil Service Commission's authority under 5 U.S.C. § 3301 and Executive Order No. 10,577 to adopt the regulation later held unconstitutional in *Mow Sun Wong* must be determined before reaching constitutional issue); *see also Ashwander v. TVA,* 297 U.S. 288, 341, 347, 348, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring). We need not rely on this presumption, however, because the Court stated that it had "no doubt" that the statute and the executive order gave the Commission discretion "either [to] retain or modify the citizenship requirement without further authorization from Congress or the President." 426 U.S. at 113, 96 S.Ct. at 1910. Clearly, then, the statute granted authority to the President, which he had delegated to the Commission before *Mow Sun Wong* but has now exercised himself, to impose the citizenship requirement.

## III.

### *Section 1981*

■ Plaintiffs argue that the executive order violates 42 U.S.C. § 1981, derived from § 16 of the Civil Rights Act of 1870, 16 Stat. 140, 144, which provides in pertinent part as follows:

> All persons . . . shall have the same rights . . . to make and enforce contracts . . . as is enjoyed by white citizens . . . .

The argument is that aliens are among the persons protected from discrimination by § 1981, *Graham v. Richardson,* 403 U.S. 365, 377, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); that the section is applicable to the federal government and its officials, *City of Milwaukee v. Saxbe,* 546 F.2d 693, 703 (7th Cir.

1976); that the section applies to discrimination in employment generally, including federal employment, *Bowers v. Campbell,* 505 F.2d 1155, 1157 (9th Cir. 1974); and that the President is subject to a valid act of Congress. This argument seems not to have been presented in *Mow Sun Wong* or the two cases holding the executive order valid (cited in the first paragraph of this opinion).

We reject the argument. If, as the Supreme Court concluded in *Mow Sun Wong,* 5 U.S.C. § 3301(1) confers authority on the President to impose a citizenship requirement for the federal civil service, 42 U.S.C. § 1981 is presumably inapplicable to such a requirement. Moreover, for at least the past forty years, Congress itself has adopted a series of enactments excluding, in varying degree, aliens from the federal civil service.[7] In view of its failure to take note of § 1981 in considering and adopting these statutes inconsistent with the interpretation of § 1981 urged here, it is unlikely that Congress has ever considered that section applicable to the citizenship qualification for federal civil service. In addition, as the Supreme Court noted in *Mow Sun Wong,* Congress has acquiesced for over a century in the imposition of citizenship requirements by the Civil Service Commission and other agencies, and although this acquiescence cannot be viewed as express approval, it is at least another indication that Congress has never viewed the citizenship requirement as contravening a federal statute. *Cf. Espinoza v. Farah Manufacturing Co.,* 414 U.S. 86, 94 S.Ct. 334, 38 L.Ed.2d 287 (1973).[8] In view of this history, we are unable to hold § 1981 applicable to the citizenship requirement for the federal civil service.

**7.** The following legislation has proscribed the use of appropriated funds to compensate aliens employed by the federal government whose post of duty is in the United States: Second Deficiency Appropriation Act, 1938, 52 Stat. 1162; Treasury-Post Office Appropriation Act, 1939, 52 Stat. 148; Treasury, Postal Service, and General Government Appropriation Act, 1973, Pub.L. 92–351, 86 Stat. 471, 487, § 602; Treasury, Postal Service, and General Government Appropriation Act, 1974, Pub.L. 93–143, 87 Stat. 510, § 602; Treasury, Postal Service,

and General Government Appropriation Act, 1975, Pub.L. 93–381, 88 Stat. 613, § 602; Department of Defense Appropriation Act, 1976, Pub.L. 94–212, 90 Stat. 153, § 753; Department of Defense Appropriation Act, 1977, Pub.L. 94–419, 90 Stat. 1299, § 750; Treasury, Postal Service and General Government Appropriation Act, 1978, Pub.L. 95–81, 91 Stat. 341, § 602.

**8.** *Espinoza* held that § 703 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1), which proscribes discrimination in pri-

## IV.

### Due Process

■ Mr. Justice Stevens' opinion for the majority in *Mow Sun Wong* "assume[d], without deciding," 426 U.S. at 114, 96 S.Ct. 1895, that the President may lawfully exclude aliens from the civil service. Justices Brennan and Marshall, whose approval of that opinion was necessary to make it an opinion of the Court, joined in it with the express understanding that the constitutional question was reserved. *Id.* at 117, 96 S.Ct. 1895. Nevertheless, there seem to us to be strong indications that the Court would sustain the President's power. The four dissenting justices, who thought the Civil Service Regulation valid, would, *a fortiori,* hold the executive order valid. A careful reading of the majority opinion convinces us that, notwithstanding the express reservations of two of the justices, at least some members of the majority would reach a different conclusion with respect to the validity of the executive order than they did with respect to the validity of the regulation. We note the recognition "that overriding national interests may provide a justification for a citizenship requirement in the federal service even though an identical requirement may not be enforced by a State," [9] *id.* at 119, 96 S.Ct. at 1913, and the Court's view that the argument in favor of the Commission's regulation "draws support from both the federal and the political character of the power over immigration and naturalization." *Id.* The latter proposition is underscored by the Court's unanimous decision the same day in *Mathews v. Diaz,* 426 U.S. 67, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976), which sustained the constitutionality of a federal statute that limited Medicare eligibility to citizens and to aliens who had filed an application for permanent residence

and had continuously resided in the United States for at least five years. Compare *Graham v. Richardson, supra,* 403 U.S. at 376, 91 S.Ct. 1848, which invalidated a state's conditioning an alien's eligibility to receive welfare benefits · on residence in United States for fifteen years. The Court in *Mow Sun Wong* also "assume[d] with the petitioners that if the Congress or the President had expressly imposed the citizenship requirement, it would be justified by the national interest in providing an incentive for aliens to become naturalized, or possibly even as providing the President with an expendable token for treaty negotiating purposes . . . ." 426 U.S. at 105, 96 S.Ct. at 1906, *see also, id.* at 116, 96 S.Ct. 1895. Also the Court remarked that "if the rule were expressly mandated by the Congress or the President, we might presume that any interest which might rationally be served by the rule did in fact give rise to its adoption," *id.* at 103, 96 S.Ct. at 1905, a presumption that would make it unnecessary for the defenders of the order to demonstrate what in fact gave rise to the adoption of the ban. Finally, the concluding paragraph of the opinion contains the following sentence:

> Since these residents were admitted as a result of decisions made by the Congress and the President, implemented by the Immigration and Naturalization Service acting under the Attorney General of the United States, due process requires that the decision to impose that deprivation of an important liberty be made *either at a comparable level of government* or, if it is to be permitted to be made by the Civil Service Commission, that it be justified by reasons which are properly the concern of that agency.

426 U.S. at 116, 96 S.Ct. at 1911 (emphasis supplied). Leaving out the alternative of

---

vate employment on the basis of "national origin," did not proscribe discrimination based on alienage. Part of the Court's reasoning included a reference to § 701(b) of that Act, 5 U.S.C. § 7151, which makes it "the policy of the United States to insure equal employment opportunities for Federal employees without discrimination because of . . . national origin . . . ," which it juxtaposed with the "longstanding practice of requiring federal employ-

ees to be United States citizens," and hence concluded that Congress would not make unlawful that which it practiced itself.

9. The federal power is not, however, "so plenary that any agent of a National Government may arbitrarily subject all resident aliens to different substantive rules from those applied to citizens." 426 U.S. at 101, 96 S.Ct. at 1904.

the Civil Service Commission's decision to impose the citizenship requirement, the quoted sentence states that because the plaintiff aliens were admitted as the result of decisions made by Congress and the President, due process requires that the decision of whether to deny them the right to federal civil service employment while they remain resident aliens must be made "at a comparable level of government," which we understand to mean either Congress or the President. That requirement is satisfied by the executive order.

Elsewhere in the Court's opinion, as we have said, the question of whether due process imposes still other requirements is reserved. We believe, however, that the national interests asserted by the government to support the executive order, which the Supreme Court said in *Mow Sun Wong* might be sufficient, are sufficient, and that the Supreme Court would so hold.

It is unnecessary, we believe, to say more. Because the constitutionality of the citizenship requirement has so recently received intensive consideration from the Supreme Court, and, no doubt, will soon be before the Court again, a further discussion of that subject in this opinion would be of little value to the Court or others.

AFFIRMED AS MODIFIED.