**Clara JAMES, et al., Plaintiffs,**

v.

**Edward MADIGAN, et al., Defendants.**

**Civ. No. 92–H–561–N.**

United States District Court,
M.D. Alabama, N.D.

Nov. 5, 1992.

Legal Services Corp. of Alabama, Lawrence F. Gardella, Montgomery, Ala., Mary Jane Oakley, Monroeville, Ala., and Robert S. Robertson, Huntsville, Ala., for plaintiffs and plaintiff-intervenor.

Kenneth E. Vines, U.S. Atty., Montgomery, Ala., Thomas W. Millet and Carole A. Jeandheur, Dept. of Justice, Civ. Div., Washington D.C., for defendant Madigan.

James Edward Long and Stephen K. Simpson, Dept. of Human Resources, Montgomery, Ala., for defendants Hunt and Cleveland.

## MEMORANDUM OPINION AND ORDER

HOBBS, District Judge.

Plaintiffs Clara James and Edward Gaines, individually and on behalf of all others similarly situated, bring this class action under the Federal Food Stamp Act, 7 U.S.C. § 2011, *et seq.*, claiming that defendants,[1] administrators of the Alabama food stamp program, wrongfully recouped overissued food stamp benefits. Defendants have moved to dismiss the action under Fed.R.Civ.P. 12(b)(6). Plaintiffs have requested class certification under Fed. R.Civ.P. 23(a)[2] and (b)(2) and have moved for a permanent injunction to enjoin defendants, their successors in office, agents, and employees from recouping under the Avenues for Self-Sufficiency Through Employment and Training Services ("ASSETS") program from a recipient's monthly food allotment in excess of 10% if the overissuance of such food allotment was due to inadvertent household error, and from recouping from such monthly food allotment to any extent if the overissuance was due

---

1. Defendant Edward Madigan is the United States Secretary of Agriculture. He is authorized to administer the food stamp program at the request of the applicable state agency. Defendant Charles G. Cleveland is the Commissioner of the Alabama Department of Human Resources. This state agency is responsible for administering the Food Stamp Program in Alabama. As Governor of Alabama, and pursuant to Ala.Code § 38-2-2 and § 38-2-3, defendant Guy Hunt is ultimately responsible for the state's food stamp program.

2. Defendants admit that there are more than 2,300 families in Alabama's Madison, Clarke, and Limestone counties who currently are experiencing an excessive reduction in program benefits so that the state can recoup overpayment.

to agency administrative error. The Court has jurisdiction under 28 U.S.C. § 1331.

The parties have agreed that there are no factual disputes on the issue of whether defendants are in violation of Congressional authority in reducing monthly food allotments in order to recoup overpayments in monthly food allowances caused either by agency or inadvertent household error. The parties also agree that the answer is based solely on the applicable statutes. Accordingly, the Court has decided this issue based on the cross-motions for summary judgment and after considering the briefs of the parties.

The Court concludes that the Secretary has exceeded his authority in granting waivers which violate statutory provisions crafted by Congress for the protection of food stamp recipients, and that plaintiffs are entitled to prevail on their motions for summary judgment, and are entitled to the injunction which they seek.

## I. CLASS CERTIFICATION

■ The parties agree, and the Court has sufficient information to determine, that class certification is appropriate pursuant to Fed.R.Civ.P. 23(a) and (b)(2).

The following class of persons is certified:

All past, present, and future ASSETS recipients in the State of Alabama whose households have incurred or will incur a fifteen percent (15%) reduction in ASSETS monthly benefits in order for the government to recoup overissuances caused by either agency administrative error or by inadvertent household error.

■ Although Rule 23(a) requires "questions of law or fact common to the class," class members may have varying

degrees of injury and still meet the commonality requirement. *See* 4 H. Newberg, *Newberg On Class Actions*, § 23.03 at 198–99 (2d ed. 1985). It is therefore no bar to class certification that the extent of injury is not common to all class plaintiffs. *Coley v. Clinton,* 635 F.2d 1364 (8th Cir. 1980).

## II. BACKGROUND

Pursuant to 7 U.S.C. § 2026(b), defendants are conducting a pilot project in Clarke, Limestone, and Madison counties of Alabama called Avenues for Self–Sufficiency Through Employment and Training Services ("ASSETS") which provides cash assistance to low income families.[3] Under Rules of the Alabama Department of Human Resources § 660–2–13–.01 the ASSETS program is governed by a consolidation of the rules embracing the Food Stamp Program, Aid to Families With Dependent Children ("AFDC"), and Low Income Energy Act Program ("LIHEAP").

In order to create single eligibility criteria for the combined program, the state of Alabama, under 7 U.S.C. § 2026(b), applied for and received waivers of various program requirements. Plaintiffs, recipients in the ASSETS program, challenge one of these waivers allowing the state to reduce ASSETS monthly benefits[4] by fifteen percent (15%)[5] to recoup overpayments under the food stamp program caused by either agency administrative error or by inadvertent household error.

## III. THE UNCONTROVERTED FACTS

Plaintiff Clara James is a seventy year old resident of Madison County who lives by herself. She received food stamps from the Madison County Department of Human Resources for many years and is now re-

3. ASSETS was implemented in Limestone County, Alabama, on May 1, 1990. The program was expanded to Clark County in September, 1990, and to Madison County in November of the same year.

4. Each month ASSETS recipients receive a single benefits check. For some class members, this check represents the total of a monthly food stamp allowance, AFDC allowance, and LIHEAP allowance.

5. The state reached this fifteen percent recoupment figure by averaging the ten percent recoupment limit for inadvertent error, 7 C.F.R. § 273.18(g)(4)(i), and the twenty percent limit for overpayments caused by fraud, 7 C.F.R. § 273.18(g)(4)(iii); however, none of the class members in this case were guilty of any fraud.

ceiving ASSETS benefits. During the period July 1986 through April 1987, James received a $150 overpayment of food stamp benefits due to agency administrative error. To recoup this overpayment, the Alabama Department of Human Resources reduced James' ASSETS monthly benefits by fifteen percent, the reduction to continue until full recoupment was obtained.

Plaintiff Edward Gaines is a fifty-five year old resident of Madison County who lives with his sixty-three year old wife. The couple has drawn food stamp benefits from the Madison County Department of Human Resources for many years and now receives ASSETS benefits in place of food stamps. During the period October, 1991 to January, 1992, the couple received an overpayment of $395 in ASSETS benefits caused by inadvertent household error. The Department of Human Resources, to recoup this overpayment, reduced Gaines' ASSETS monthly benefits by fifteen percent to continue until full recovery of the overpayment.

## IV. DISCUSSION

■■■ The case at bench reduces to a dispute over statutory interpretation with no cases squarely addressing the issue of whether the government can waive certain provisions of the Food Stamp Act, 7 U.S.C. § 2011, *et seq.*, for persons in the ASSETS program in order to recoup overpaid allotments under the food stamp program. The government overissuances of food stamp allotments to ASSETS recipients which are in issue result from one of two types of error: 1. inadvertent household error by the recipient; or 2. administrative agency error by the government.

The threshold question raised in this litigation is whether the government can reduce ASSETS monthly benefits to recipients by fifteen percent (15%) in order to recoup overissuances caused by 1. inadvertent household error or 2. by agency administrative error. Plaintiffs contend that reduction in ASSETS benefits to recover overpayment caused by inadvertent household error is limited to ten percent (10%), and where such overpayment was the result of agency administrative error, plaintiffs contend that defendants are barred by statute from making any reduction in the monthly food allowance.

At the heart of this litigation is the application of 7 U.S.C. § 2022(b)(2)(A). That section provides:

> State agencies shall collect any claim against a household arising from the overissuance of coupons, *other than claims the collection of which is provided for in paragraph (1) of this subsection and claims arising from an error of the state agency,* by reducing the monthly allotments of the household. These collections shall be limited to 10 per centum of the monthly allotment (or $10 per month, whenever that would result in the faster collection rate), except that the household shall be given notice permitting it to elect another means of repayment and given 10 days to make such an election before the State agency commences action to reduce the household's monthly allotment.

7 U.S.C. § 2022(b)(2)(A) (emphasis added).

Although section 2022(b)(2)(A) plainly [6] provides that collection of overpayments in cases of inadvertent household error is limited to a ten percent (10%) reduction of the household's future monthly food stamp allotment or $10.00 per month, whichever is greater, defendants argue that the clear statutory restriction of 10% on the amount that can be recouped can be waived because the ASSETS program is a conglomeration of three benefit programs, rather than purely a food stamp program. Defendants maintain that the Secretary has properly waived the restriction on such recoupment.

---

6. Where a household inadvertently under-reports its total income, the government's claim cannot be classified as "arising from an error of the state agency." In addition, such a claim does not fit under the ambit of "paragraph (1)" of section 2022(b) which speaks to ineligibility determinations. *See also* 7 C.F.R. § 273.18(g)(4)(i) ("[f]or inadvertent household error claims, the amount of food stamps shall be the greater of 10 percent of the household's monthly allotment or $10 per month").

Section 2022(b)(2)(A) is equally clear that defendants may not recoup at all from a recipient's monthly food allowance for an overissuance of food stamps caused by agency administrative error. But here too defendants contend that the statutory prohibition against any reduction in the monthly food allowance, where the overpayment was due to agency error, can and has been properly waived by the Secretary under the ASSETS program. Indeed, defendants contend that under 7 U.S.C. § 2026(b), the section governing pilot projects, the Secretary's ability to grant waivers to pilot projects whether for agency or inadvertent household error is unlimited.

§ 2026(b)(1)(A) provides:

The Secretary may conduct on a trial basis, in one or more areas of the United States, pilot or experimental projects designed to test program changes that might increase the efficiency of the food stamp program and improve the delivery of food stamp benefits to eligible households, including projects involving the payment of the value of allotments or the average value of allotments by household size in the form of cash to eligible households all of whose members are age sixty-five or over or any of whose members are entitled to supplemental security income benefits under Title XVI of the Social Security Act [42 U.S.C.A. § 1381 et seq.] or to aid to families with dependent children under part A of Title IV of the Social Security Act [42 U.S.C.A. § 601 et seq.], the use of countersigned food coupons or similar identification mechanisms that do not invade a household's privacy, and the use of food checks or other voucher-type forms in place of food coupons. The Secretary may waive the requirements of this chapter to the degree necessary for such projects to be conducted, except that no project, other than a project involving the payment of the average value of allotments by household size in the form of cash to eligible households or a project conducted under paragraph (3),

shall be implemented which would lower or further restrict the income or resource standards or benefit levels provided pursuant to sections 2014 and 2017 of this title.

7 U.S.C. § 2026(b)(1)(A).

It is under the guise of defendants' pilot project scheme, authorized by section 2026(b)(1)(A), that defendants posit that the Secretary of Agriculture has *carte blanche* authority to recoup overissued benefits. The Court does not agree.

Defendants cannot simply ignore Congress' intent, clearly expressed in 7 U.S.C. § 2022(b), to prevent the government from dipping without restriction into a recipient's monthly food stamp allotment to cure either its own administrative mistake or the recipient's inadvertent error, merely because the ASSETS program falls under the pilot project program of § 2026(b). Even the specific language of that section makes it clear that notwithstanding the Secretary's broad discretion in administering pilot programs, food stamp benefit levels cannot be "lower[ed] or further reduc[ed]." [7] 7 U.S.C. § 2026(b)(1).

In the Food Stamp Act it is without dispute that Congress put a limit of 10% on the power of the agency to deduct from a recipient's monthly food allotment where the overissuance was the inadvertent error of the recipient. Why would Congress authorize under the ASSETS program the elimination of the 10% restriction for household error and allow unrestricted reduction in a recipient's food allotment? Even more illogical, why would Congress in the Food Stamp Act forbid any reduction in the monthly food stamp allotment if the overissuance was caused by agency error, but in the ASSETS program authorize the Secretary to reduce a recipient's monthly food allotment without any restriction merely because the recipient was now receiving a food allotment under an ASSETS program?

It is clear that Congress was concerned, even where the recipient caused the error, that monthly benefits not be reduced to

---

7. Although the defendants argue that it is the ASSETS cash benefit rather than food stamp benefits *per se* that is being reduced, the uncon-troverted evidence shows that only the food stamp component of the plaintiffs' ASSETS cash benefit is being diminished by 15%.

such an extent as to cause great economic injury to ones who might go hungry. No reason is suggested as to why Congress, under the ASSETS program, would allow unlimited reduction of benefits to correct agency overpayment. Moreover, nothing in the ASSETS program indicates that provisions of the Food Stamp Act can be waived.[8]

■ The language relied on by the government as authorizing the Secretary to scrap the restrictions on the agency's power to recoup for overissuance of food stamp allotments provides that the Secretary may conduct pilot projects "to test program changes *that might increase the efficiency of the food stamp program and improve the delivery of food stamp benefits to eligible households.*" 7 U.S.C. § 2026(b)(1) (emphasis added). The section further provides that "the Secretary may waive the requirements of this chapter to the degree necessary for such projects to be conducted...." *Id.*

This Court finds it difficult to understand how it improves "the efficiency of the food stamp program," or "improves the delivery of food stamp benefits to eligible households," to allow the government agency to ignore the protection crafted by Congress and to allow the Secretary, in his discretion and without limit, to recoup benefits caused by inadvertent household error or agency error out of the monthly food stamp allotment. This change in no way aids the efficiency of the food stamp program or the delivery of food stamp benefits to eligible households. Clearly, such an elimination of the protection carefully created by Congress is not "necessary for such projects to be conducted." 7 U.S.C. § 2026(b)(1).

While the Court will defer to an agency's rational interpretation of unclear legislation, where Congress has provided a plain meaning, both the agency and the Court

must follow Congress' intent. *Chevron U.S.A. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). 7 U.S.C. § 2022(b)(2)(A) mandates that coupon overissuance caused by agency administrative error may not be recouped by reducing future allotments. *Labbie v. Robinson,* 544 So.2d 734 (La.App.Ct.1989).

Moreover, 7 U.S.C. § 2022(b)(2)(B) allows the government to recoup overissuances caused by household error or by agency administrative error in other ways than by reducing monthly allotments.[9] The Secretary of Agriculture recently designed such an alternate method. *See Abernathy v. Yeutter,* 725 F.Supp. 459 (W.D.Mo.1989).

## V. CONCLUSION

For the foregoing reasons, the Court holds that the Food Stamp Act, 7 U.S.C. § 2011, *et seq.,* does not permit the government in administering the ASSETS program to reduce the monthly food stamp allotment by more than 10% in order to recoup overissuances of food allotments due to inadvertent household error, nor does it permit any reduction in the monthly food allowance where such overissuance was due to agency error.

Accordingly, plaintiffs' motion for summary judgment is granted, and defendants' motion is denied. Plaintiffs' motion for a preliminary injunction is granted, and defendants, their successors in office, agents, and employees are enjoined from collecting from monthly food allowances in the ASSETS program for overissuance of food allotments in a manner inconsistent with this opinion.

The Court will award reasonable attorney fees and expenses to plaintiffs' attorneys. Plaintiffs' attorneys shall file such a request for attorney fees and expenses ac-

---

8. In fact, defendants' waiver theory is unmistakably dispelled by the Secretary's own operating guidelines. Pursuant to 7 C.F.R. § 272.-3(c)(2)(ii), a waiver shall not be approved when it "would result in material impairment of any statutory or regulatory rights of participants or potential participants."

9. 7 U.S.C. § 2022(b)(2)(B) reads: "State agencies may collect any claim against a household arising from the overissuance of coupons, other than claims collected pursuant to paragraph (1) or subparagraph (A), *by using other means of collection.*" (emphasis added).

companied by appropriate time sheets and supporting data within 15 days. The parties are allowed 30 days after the filing of such claim to attempt to agree as to reasonable attorney fees and expenses, bearing in mind the quick lines laid down by the Supreme Court in *City of Burlington v. Dague,* —— U.S. ——, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992) and *Pennsylvania v. Del. Valley Citizens' Council,* 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986). If the parties are unable to agree as to an appropriate amount, the Court will set a hearing for the purpose of making such a determination.

An appropriate order shall issue.

### ORDER

Pursuant to an opinion filed contemporaneously herewith, IT IS ORDERED THAT:

1. The plaintiffs' Motion for an Injunction is GRANTED;
2. Defendants, their successors in office, agents, and employees are enjoined from collecting from monthly food allowances in the ASSETS program for overissuance of food allotments where such overissuance was due to agency error;
3. Defendants, their successors in office, agents, and employees are enjoined from collecting from monthly food allowances in the ASSETS program an amount in excess of 10% for overissuance of food allotments where such overissuance was due to inadvertent household error;
4. The plaintiffs' Motion for Summary Judgment is GRANTED;
5. The defendants' Motion for Summary Judgment is DENIED;
6. Defendants pay plaintiffs' attorneys reasonable attorney fees and expenses expended in this action.