Susan BREMILLER, Plaintiff,

v.

CLEVELAND PSYCHIATRIC INSTITUTE, et al., Defendants.

No. 1:94 CV 1151.

United States District Court, N.D. of Ohio, Eastern Division.

Aug. 25, 1995.

Howard A. Schulman, Schulman, Schulman & Meros, Cleveland, OH, for plaintiff.

Franzetta D. Turner, Office of Asst. Atty. General, Cleveland, OH, Robert L. Griffin, Office of Attorney General, Columbus, OH, for defendants.

### MEMORANDUM AND ORDER

OLIVER, District Judge.

### I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, Susan Bremiller, filed her complaint against one of the State of Ohio's mental health hospitals, the Cleveland Psychiatric Institute ("CPI"), Michael Hogan, the Director of the Ohio Department of Mental Health in his individual capacity, Sandra Rahe, the Acting Chief Executive Officer of CPI in her individual capacity, Douglas Aaron, an employee of CPI and John Doe co-conspirators whose identities are unknown to the plaintiff. She seeks recovery under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e—2000e–17 for sex discrimination, sexual harassment, creation of hostile work environment and retaliatory discharge. Plaintiff also asserts claims under 42 U.S.C. §§ 1983 and 1985 for violations of the 5th and 14th Amendments to the United States Constitution. Finally, Plaintiff asserts pendant state law claims for violation of O.R.C.

§ 4112 (the state anti-discrimination in employment statute), public policy retaliatory discharge, defamation and tortious interference with contract, intentional infliction of emotional distress, assault and battery, and false imprisonment.

Plaintiff's claims stem from her employment as a nurse at CPI. In that capacity, Plaintiff asserts that male colleagues subjected her and other female staff members to continuous sexual harassment from the first day of her employment in August of 1991 until her termination in June of 1993. According to Plaintiff, this harassment included, *inter alia*, verbal threats, physical intimidation, sexual jokes, and unwanted touching and groping. According to Plaintiff, most of this harassment came from the male Therapeutic Program Workers ("TPWs"), but also from the interim head of security, Mr. David Sladewski and part-time police officers at CPI.

Plaintiff claims that nurses constantly reported this behavior to their supervisors and to Sandra Rahe, the acting CEO for CPI, but no one ever took any action to stop the harassment. In fact, Plaintiff contends that Sandra Rahe instructed Bonnie Ameche, the nurse educator, not to discuss sexual harassment during nurse orientation. Consequently, Plaintiff alleges, CPI never addressed the issue, not even during Plaintiff's EEO orientation.

Finally, just prior to her termination, on June 5, 1993, Plaintiff alleges that Defendant Aaron held her at gun point in a room at CPI for over one and one-half hours and during that time he fondled her, exposed himself to her and masturbated in front of her. Plaintiff immediately reported this incident to the State Highway Patrol, whose jurisdiction included CPI. The next day, she filed a police report with the Cleveland Police Department. Finally, she reported the incident to her nurse supervisor and the personnel director at CPI. On June 7, 1993, Plaintiff met with Sandra Rahe and Marie deBrossard to discuss the attack. At that time, Sandra Rahe terminated Plaintiff on the basis that it was easier to terminate Plaintiff, a non-union employee, than to terminate defendant Aaron, a union employee.

Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") against CPI on December 1, 1993. She received her right to sue letter on May 6, 1994. According to Plaintiff, between March 29, 1994, and April 11, 1994, while the EEOC was conducting its investigation into Plaintiff's complaint, Defendants Hogan and Rahe conspired to terminate Ruth Spencer, who maintained possession and control over the documents relevant to Plaintiff's claims. Plaintiff alleges that upon terminating Ruth Spencer, Defendants Hogan and Rahe further conspired to enter Ruth Spencer's office and removed and destroyed all documents relevant to Plaintiff's complaint.

Plaintiff filed this lawsuit on June 3, 1994. Defendants filed a motion to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on August 4, 1994. On January 12, 1995, this Court overruled in part and granted in part Defendants' motion. Among the claims the court did not dismiss were Plaintiff's claims against the individual defendants under 42 U.S.C. § 1983 and § 1985 and a Title VII claim against CPI. Also, on January 12, 1995, this Court granted Plaintiff's motion to certify this action as a class action. *See, Bremiller v. Cleveland Psychiatric Institute*, 879 F.Supp. 782 (N.D.Ohio 1995). Now Defendants request this Court to reconsider its ruling in certifying the class and a portion of its ruling denying the motion to dismiss by the individual defendants on the basis of qualified immunity. For the reasons stated herein, this Court affirms its prior class certification order with some clarification. It also affirms its earlier ruling that Plaintiff's substantive due process claims against the individual defendants should not be dismissed on the basis of qualified immunity.

## II. DEFENDANTS' MOTION FOR RECONSIDERATION OF CLASS CERTIFICATION

Defendants raise several arguments in favor of decertifying the class: Plaintiff fails to meet the numerosity requirement under Federal Rule of Civil Procedure 23, individuals should not be allowed to raise stale Title VII claims under the guise of a class action,

class actions are inappropriate where plaintiff requests compensatory damages and future members should not be included in the class. Plaintiff, in its response to Defendant's motion, requests this Court to redefine the parameters of the class. Finally, both parties request the court to direct notice to the class members as soon as possible. The court addresses each of the above-mentioned issues in turn.

## A. The Numerosity Requirement

Defendants argue that "Plaintiff makes 'naked assertions' and 'mere allegations' in her Complaint and the identity and location of class members and the total membership is indeterminable." Motion for Reconsideration, at 2. Furthermore, Defendants argue that:

Plaintiff does not identify any other persons who have been subjected to the alleged discriminatory practices. Plaintiff does not identify a single individual who falls into one of the two classes she seeks to represent, (i.e., damages and injunction). Nor is there any indication of the geographical diversity of class members Plaintiff seeks to represent. *Id.*

■ Rule 23(a)(1) provides that a class action may be maintained only if "the class is so numerous that joinder of all members is impracticable." FED.R.CIV.P. 23(a)(1). Several courts, including the Sixth Circuit, in examining this issue have concluded that while the class must be sufficiently defined so that potential class members can be identified, the class does not have to be so ascertainable that every potential member can be identified at the commencement of the action. *See, e.g., Senter v. General Motors Corporation,* 532 F.2d 511 (6th Cir.), *cert. denied,* 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976) (held numerosity requirement met where class consisted of all black employees who were denied promotional opportunities by defendant); *Cook v. Rockwell International Corporation,* 151 F.R.D. 378 (D.Colo.1993); *Orantes–Hernandez v. Smith,* 541 F.Supp. 351, 370 (C.D.Ca.1982) ("Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satis-

fied."); *Fitzgerald v. Schweiker,* 538 F.Supp. 992, 1000 (D.Md.1982) ("Where it is difficult to determine class size with precision, plaintiff need make only a reasonable estimate of the number of class members."); *Long v. Thornton Tp. High School District 205,* 82 F.R.D. 186 (N.D.Ill.1979).

In *In Re Alcoholic Beverages Litigation,* 95 F.R.D. 321 (E.D.N.Y.1982), operators of a variety of liquor stores, restaurants, bars and catering services, sought class certification to bring an antitrust action against six major wholesale distributors of alcoholic beverages in the metropolitan New York area. The court certified the following class: "[a]ll persons ... who purchased alcoholic beverages directly from defendants during the period December 23, 1976 through, at least, January 6, 1981." *Id.* at 323. The court stated that "the fact that the size of the proposed class has not been exactly determined is not a fatal defect in the motion; a class may proceed upon estimates as to the size of the proposed class." *Id.* at 324.

In *Vergara v. Hampton,* 581 F.2d 1281 (7th Cir.1978), the court certified a class consisting of "all nationals and citizens of foreign states living in Illinois who have been admitted into Illinois for permanent residence and who desire to apply and be eligible for appointment in the United States Civil Service." *Id.* at 1283. In so holding, the court stated that "the difficulty in determining the exact number of class members does not preclude class certification." *Id.* at 1284.

■ Plaintiff asserts that the potential class is comprised of at least 260 past and present employees of CPI. The above case-law demonstrates two points. First, merely because the Plaintiff in this action cannot fully identify the participants in this matter does not create an inference that she fails to meet the numerosity requirement. Second, simply because Plaintiff cannot give the exact number of the putative class does not amount to a failure to satisfy the numerosity requirement. More importantly, given that the class members are past and present employees of Defendant CPI, Defendants cannot claim complete ignorance as to the identities of the class members nor can they use this ignorance to try to defeat class certification.

*See, e.g., Ventura v. New York City Health And Hospitals Corp.,* 125 F.R.D. 595, 599 (S.D.N.Y.1989); *Folsom v. Blum,* 87 F.R.D. 443, 445 (S.D.N.Y.1980).

In *Ventura,* plaintiffs sued the city hospital for drug testing its employees on the basis of race and without the employees' consent. As in the instant case, plaintiffs brought suit on behalf of all past and present employees. Defendants challenged class certification on the grounds that plaintiffs failed to sufficiently identify the class members so as to satisfy the numerosity requirement of Rule 23. The court certified the class holding that "[p]laintiff's lack of knowledge as to the exact number of affected persons is not a bar to maintaining a class action, when defendants have the means to identify those persons at will.... Defendants need only examine employees' personnel files to obtain such information." *Ventura,* 125 F.R.D. at 599. Similarly, in this case, Defendant CPI can examine its own personnel files to aid in the determination of the identity of the potential class members and thus, may not use Plaintiff's lack of knowledge as to the exact number of affected persons as a bar to Plaintiff maintaining this action as a class action.

■■■ Defendants also implicitly suggest that the class may not be so numerous because many of the potential class members may not want to come forward or are satisfied with the status quo. Yet, that argument does not defeat class certification. In *Dawes v. Philadelphia Gas Commission,* 421 F.Supp. 806 (E.D.Pa.1976), plaintiffs moved for class certification in their suit against the Philadelphia Gas Works for pre-termination hearings. The defendants countered that many of the customers might be satisfied with the status quo and would not want to join the litigation. The court rejected the defendants' argument and certified the class. In so doing the court noted that:

> If there is a constitutional right to a pre-termination hearing individual plaintiffs surely cannot be precluded from asserting

such a right merely because a majority of their fellow customers might prefer not to have the right asserted. In determining whether the litigation asserting the existence of such a right may properly be maintained as a class action, the issue is merely whether the representative plaintiffs have demonstrated the probability of the existence of a sufficient number of persons similarly inclined and similarly situated to render the class action device the appropriate mechanism for obtaining a judicial determination of the rights alleged.

*Id.* at 813.

Consequently, to the extent that Plaintiff has a constitutional right to be free from sexual harassment in the work place, she may assert that right in a class action because the complaint demonstrates the probability of the existence of a sufficient number of persons similarly inclined and similarly situated to render the class action device the appropriate mechanism for obtaining a judicial determination of the rights alleged.

## B. The Class Action Device and the Revival of Stale Claims Under Title VII

■■■ Defendants assert that the Plaintiff in *Doe v. CPI, et al.* failed to exhaust her administrative remedies.[1] They further argue that the consolidation of *Bremiller* and *Doe* allows Doe to take improper advantage of Plaintiff Bremiller's properly asserted claim by including her procedurally barred claims in Bremiller's class action. Defendants' fears are unfounded for two reasons.

Firstly, the *Doe* and *Bremiller* actions have not been consolidated. Therefore, Doe's allegedly procedurally barred action has not been merged into Bremiller's properly asserted complaint. Secondly, as a member of Bremiller's class action, Doe has a right to share in any recovery as does the rest of the *Bremiller* class. Therefore, Doe's action may not be properly viewed as utiliz-

---

1. *Doe v. CPI,* et al., involves a nurse, Jane Doe, at CPI who filed an action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e—2000e–17 against CPI and many of the same defendants sued in *Bremiller.* Defendants in *Doe* contend that Plaintiff Doe failed to exhaust her state administrative remedies prior

to filing a claim with the Equal Employment Opportunity Commission. According to the Defendants, this failure to exhaust state administrative remedies deprives this Court of subject matter jurisdiction thereby effectively barring Plaintiff Doe's claim.

ing the *Bremiller* class action as a way to circumvent the administrative requirements of Title VII. Thus, this argument fails to persuade the court to decertify the class.

## C. Class Actions And Compensatory Damages

Defendants contend that compensatory damages are not incidental to injunctive relief and therefore are "not necessarily compatible with class injunctive relief." Motion for Reconsideration, at 3. (quoting *Williams v. Owens–Illinois, Inc.*, 665 F.2d 918, 928 (9th Cir.1982)). Furthermore, Defendants contend that "establishing the amount of compensatory damages due each plaintiff is a far more complex and uncertain exercise than the determination of back pay, and greatly complicates the management of the class action." *Id.* From this, the Defendants conclude that "the class action format would not be the superior method for adjudicating Plaintiff's claims, nor of the class she seeks to represent given her compensatory damages request." *Id.*

The court finds Defendants' conclusion erroneous. In *Williams,* the court actually certified the class. The court merely limited the class remedy to injunctive relief and required individual determinations as to damages. *Williams,* 665 F.2d at 928. The *Williams* court is not alone in this holding. *See, e.g., Safran v. United Steelworkers of America, AFL–CIO,* 132 F.R.D. 397, 402 (W.D.Pa.1989) ("a disparity in damages among class members will not bar a finding that the claims of the representatives are typical of the proposed class and that they will fairly and adequately protect the interests of the members."); *White v. National Football League,* 822 F.Supp. 1389, 1403 (D.Mn.1993) ("Differences in the amount of monetary recovery to which particular class members may be entitled also does not defeat the propriety of class certification of a settlement class."); *In re Amerifirst Securities Litigation,* 139 F.R.D. 423, 428 (S.D.Fla. 1991) ("Individual differences concerning treatment or damages will not defeat a finding of commonality."); *James v. Madigan,* 806 F.Supp. 239, 241 (M.D.Ala.1992) ("It is therefore no bar to class certification that the extent of injury is not common to all class plaintiffs").

In *Sterling v. Velsicol,* 855 F.2d 1188 (6th Cir.1988), the court held that there is an increasingly insistent need for a more efficient method of disposing of a large number of lawsuits arising out of a single disaster or course of conduct ... no matter how individualized the issue of damages may be, these issues may be reserved for individual treatment with the question of liability tried as a class action. Consequently, the mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible. *Id.* at 1197.

In *Day v. NLO,* 851 F.Supp. 869 (S.D.Ohio 1994), plaintiffs brought a class action on behalf of employees and frequenters of a nuclear weapons components manufacturing plant for exposure to radiation. Defendants opposed certification claiming that the differences between class members as to the work they performed, the duration of their employment and their personal health habits make class adjudication impossible. The court rejected the defendant's argument and certified the class. In so holding, the court stated that "As our intended trial structure indicates, we realize the need to consider these factors in awarding compensatory damages. But there are common elements of law and fact that make this case appropriate for class certification." *Id.* at 884.

More importantly, the potential class members do not need to have identical claims to maintain a class action. In *Brown v. Pro Football,* 146 F.R.D. 1 (D.D.C.1992), which involved an antitrust action against the National Football League brought by its players, the court held that:

> More often, plaintiffs have common injuries from a common source, and the jury must determine the exact amount of each plaintiff's individual damages. 'It is settled that individual issues of fact will invariably be present, and that that fact will not preclude a class action.... Commonality is not ruled out as long as there is no

predominance of issues capable only of individual trial.' (quoting Herbert B. Newburg, 3 Newburg on Class Actions § 18.07, 2d Ed. (1985)). In fact, the framers of Rule 23 seemed to target cases such as this one as appropriate for class determination: "[C]lass actions ... may remain [appealing] despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class." (quoting Rules Advisory Committee Notes to 1966 Amendments to Rule 23, 39 F.R.D. 69, 103 (1966)). *Id.* at 4.

 To satisfy the commonality requirement, it is enough that "discrimination had been practiced across the board." *Senter v. General Motors Corp.,* 532 F.2d 511, 524 (6th Cir.1976). Plaintiff clearly alleges, with specificity, that discrimination is practiced across the board at CPI. The above-cited caselaw demonstrates that the existence of individual damages issues is not enough to defeat class certification on the commonality element. Therefore, the court declines to decertify the class on this basis.

### D. Future Employees And Class Membership

 Defendant argues that Plaintiff's class should not include future members because they lack standing to be part of the class since they have yet to be injured. Motion for Reconsideration, at 4. This Court, by virtue of the jurisdictional limitations imposed by Article III of the United States Constitution, does not have the authority to bind the parties before it in the absence of an actual case or controversy. Since future employees, by definition, do not exist, they are incapable of being injured in fact. Thus, there is no standing to litigate and claims of future employees are not ripe for judicial resolution. *See, e.g.,* U.S. Const. Art. III, § 1 *et seq.;* 42 U.S.C. § 2000e *et seq.; Senter v. General Motors,* 532 F.2d 511, 516–17 (6th Cir.1976); *Kucinich v. Forbes,* 432 F.Supp. 1101, 1107 (N.D.Ohio 1977).

 Despite the foregoing, it is clear that any injunctive relief will naturally redound to the benefit of future employees. *See, e.g., Young v. Pierce,* 544 F.Supp. 1010, 1028 (E.D.Tx.1982) ("when the relief sought is injunctive relief, the benefits ... would inure not only to the known class, but also to a future class of indefinite size."); *Foster v. Bechtel Power Corporation,* 89 F.R.D. 624, 626 (E.D.Ark.1981) ("To the extent that future employees would be affected by discrimination subsequent to this cause of action, injunctive relief, if any is given, will, as a practical matter, adequately protect their interests...."); *Hines v. D'Artois,* 383 F.Supp. 184, 187 (W.D.La.1974). Defendants acknowledge this point, as well, stating "[i]f the plaintiff class prevails, an award of injunctive or declaratory relief can be fashioned to inure to the benefit of future members whether or not a future class has been certified." Motion for Reconsideration, at 4. By way of clarification, the court has not certified a class of future employees. Rather, the court merely emphasizes that future employees will naturally benefit from any relief awarded to the Bremiller class.

### E. Definition Of The Class

In responding to Defendant's Motion for Reconsideration, Plaintiff asks this Court to reconsider its definition of the class. In its certification order, this Court defined the class as "those women at CPI with claims of sexual harassment and discrimination which accrued between February 4, 1993, and December 1, 1993." *See* Memorandum and Order, January 12, 1994, 879 F.Supp. at 795. Plaintiff asks this court to include in the class definition "all victims of sexual harassment and/or sex discrimination between February 4, 1993 and the date of trial." Plaintiff's Opposition To Defendants' Motion For Reconsideration And In The Alternative, Identification Of The Class ("Motion in Opposition"), at 4–5.

 Typically, in employment discrimination cases, courts do not set termination dates for the class. *See, e.g., Sweet v. General Tire & Rubber Co.,* 74 F.R.D. 333 (N.D.Ohio 1976) (court certified a class that consisted of "all women who have been employed, who are employed, or who may become employed during the pendency of this suit at Defendant...."); *Nash v. City of*

*Oakwood, Ohio,* 94 F.R.D. 83 (S.D.Ohio 1982) (court certified class consisting of "past, present, and future female applicants for city public safety officer position...."); *Kornbluh v. Stearns & Foster Co.,* 73 F.R.D. 307 (S.D.Ohio 1976) (court certified class consisting of "all female persons who have applied at defendant's Lockland, Ohio facility since March 1, 1974 or will apply at the Lockland facility in the future...."); *Parmer v. National Cash Register Company,* 346 F.Supp. 1043 (S.D.Ohio 1972) (the court certified a class consisting of "women who are employed or may be prospectively employed by NCR's Cambridge, Ohio, plant and who are or may become members of Local # 1854.").

In light of this caselaw, the court hereby defines the class as follows: those women at CPI with claims of sexual harassment and/or sex discrimination between February 4, 1993, and the date of trial. To reiterate, this class definition does include future employees for the limited purpose of allowing such future employees to benefit from any injunctive relief that might be awarded in this case.

**F. Notice To The Class**

■ Both parties request that notice be sent to all class members. *See* Motion for Reconsideration, at 4–7; Motion in Opposition, at 5. This court certified the class under Rule 23(b)(1), (b)(2) and (b)(3).[2] The United States Supreme Court in *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) held that Federal Rule of Civil Procedure 23(c)(2) requires individual notice be given to all members of

the class who are identified through reasonable effort in a 23(b)(3) class action.[3] Furthermore, where plaintiffs request damages in addition to injunctive relief, notice is required. In *King v. South Cent. Bell Telephone & Telegraph,* 790 F.2d 524, 529 (6th Cir.1986), the court held that:

> Where individual monetary claims are at stake, the balance swings in favor of the provisions [sic] of some form of notice. Before an absent class member may be forever barred from pursuing an individual damage claim, however, due process requires that he receive some form of notice that the class action is pending and that his damage claims may be adjudicated as part of it.

According to the United States Supreme Court,

> Individual notice to identifiable class members is not a discretionary consideration to be waived in particular case, nor may notice requirements be tailored to fit pocketbooks of the particular plaintiffs; accordingly, the requirement cannot be disregarded even though the cost might be prohibitively high and even though no prospective class member has a large enough stake in the matter to justify separate litigation of an individual claim.

*Eisen,* 417 U.S. at 176, 94 S.Ct. at 2152.

■ Typically, notice by first-class mail and by publication satisfy due process requirements. *See, e.g., In re Nissan Motor Corp. Antitrust Litigation,* 552 F.2d 1088

---

**2.** The Rule reads in pertinent part as follows:

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to

the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**3.** Rule 23(c)(2) reads:

"In any class maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." 23(c)(2) Fed R.Civ P.

(5th Cir.1977); *Key v. Gillette Co.*, 90 F.R.D. 606 (D.Mass.1981); *Cayuga Indian Nation v. Carey*, 89 F.R.D. 627 (N.D.N.Y.1981); *Branham v. General Electric Co.*, 63 F.R.D. 667 (M.D.Tenn.1974); *Cutner v. Fried*, 373 F.Supp. 4 (S.D.N.Y.1974).

▪▪▪▪ The notice should contain information reasonably necessary to make a decision whether to remain a class member and be bound by the final judgment or to opt out of the action. The standard is that notice must contain information a reasonable person would consider material in making an informed, intelligent decision of whether to opt out of or to remain a member of the class and be bound by a final judgment. *In re Nissan Motor Corp. Antitrust Litigation*, 552 F.2d 1088 (5th Cir.1977). *See, also, Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173 (9th Cir.1977).

▪▪▪▪ In compliance therewith, the notice should advise each class member of the following: that she may be excluded from the class on request; that judgment, whether favorable or unfavorable, would bind all members who did not request exclusion and that any member who did not request exclusion might appear through counsel. *See, e.g., Cutner v. Fried*, 373 F.Supp. 4 (S.D.N.Y. 1974). Furthermore, notice must be distributed to all class members at the earliest possible time. *In re Home–Stake Production Co. Securities Litigation*, 76 F.R.D. 351 (N.D.Okla.1977). Finally, the cost of sending notice must be borne by Plaintiffs. *See, e.g., Jones v. Diamond*, 594 F.2d 997 (5th Cir. 1979); *Eley v. Morris*, 390 F.Supp. 913 (N.D.Ga.1975); *Cutner; Oscar Gruss & Son v. Geon Ind., Inc.*, 89 F.R.D. 32 (S.D.N.Y. 1980); *Gates v. Dalton*, 67 F.R.D. 621 (E.D.N.Y.1975); *Dudley v. Southeastern Factor and Finance Corp.*, 57 F.R.D. 177 (N.D.Ga.1972).

To summarize, the court requires Plaintiff to mail notice to all identifiable class members and additionally to publish notice to ensure that potential class members receive the best notice practicable. Furthermore, the court recognizes that Plaintiff does not know the identity of all class members at this time. However, the court expects Plaintiff to notify class members as they become known throughout the course of discovery.

## III. DEFENDANTS' MOTION TO RECONSIDER QUALIFIED IMMUNITY

Defendants have asked the court to reconsider its ruling that the named defendants were not entitled to qualified immunity regarding Plaintiff's substantive due process claims. They maintain that Plaintiff failed to allege the violation of a constitutional right or to demonstrate that such a right is clearly established. Furthermore, Defendants argue that this Court erred in applying Second Circuit caselaw to meet the clearly-established test.

▪▪▪▪ In order to deny Defendants qualified immunity, this Court must find two things. First, this Court must find that Plaintiff's allegations rise to the level of a constitutional violation. *See, e.g., Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). Second, this Court must determine that the constitutional right violated is clearly established. *Id.*

### A. Constitutional Violation

▪▪▪▪ Defendants argue that since Plaintiff filed an action in both the EEOC and this Court, they could not have denied Plaintiff a right of access to the courts. Therefore, as a threshold matter, there is no Constitutional violation. *See* Motion to Reconsider, at 4. Defendants read access to the courts too narrowly. The scope of access to the courts includes not only physical prevention from filing actions, but obstruction as well. *See, e.g., Morello v. James*, 810 F.2d 344 (2nd Cir.1987) (citing *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) and *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969)). By allegedly destroying relevant documents during the pendency of an EEOC investigation, Defendants obstructed Plaintiff's access to the courts. Therefore, Plaintiff asserts a constitutional violation of her substantive due process rights.

582

## B. Clearly–Established Right

Defendants contend that the right of access to courts is not clearly established, and relying on the holding in *Ohio Civil Service Employees Association, et al. v. Seiter, et al.*, 858 F.2d 1171 (6th Cir.1988), that this court erred in relying on a Second Circuit case to find the establishment of this right. *See* Motion to Reconsider, at 3. In *Seiter*, the Sixth Circuit held that "in the ordinary instance, to find a clearly-established right, a district court must find binding precedent by the Supreme Court, its court of appeals or itself." 858 F.2d at 1177. In relying on *Morello*, this Court merely analogized to the particular fact pattern. However, the precedential basis for the holding in *Morello* (that defendants had violated plaintiff's right of access to the courts) lies in Supreme Court and Sixth Circuit authority.

In *John L. v. Adams*, 969 F.2d 228 (6th Cir.1992), the Sixth Circuit, in discussing the right of access to the courts states that:

> On numerous occasions the Supreme Court has recognized the existence of a constitutional right of access to the courts.... Outside the prisoner context, the Court has found support for the right of access in the Privileges and Immunities Clause of Article IV, *Chambers v. Baltimore & Ohio R.R. Co.*, 207 U.S. 142, 28 S.Ct. 34, 52 L.Ed. 143 (1907); ... as well as in due process of law, *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). The Supreme Court has also held, 'The right of access to the courts is but one aspect of the right of petition [of the First Amendment].' *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972).

*Id.* at 231. (parallel citations omitted). The Sixth Circuit also noted that "courts have recognized that the right of access to courts is strongest in the context of constitutional claims and other civil rights actions." *Id.* at 236 (citations omitted).

■■■ The above-referenced caselaw demonstrates that even in nonprisoner cases, such as the instant case, state officials may not deny people access to the courts. This principle is especially true in civil rights cases. Consequently, by allegedly destroying documents related to Plaintiff's complaint, Defendants violated a clearly established right of the Plaintiff to access to the courts. Defendants' alleged actions defeat any entitlement to qualified immunity.

## CONCLUSION

The court holds the following: 1) Plaintiff satisfies the numerosity requirement of Rule 23; 2) Plaintiff has not circumvented the administrative requirements of Title VII by bringing this class action; 3) Plaintiff's request for compensatory damages does not defeat class certification; 4) Future employees of CPI are members of the class for the limited purpose of allowing them to benefit from any injunctive relief awarded Plaintiff in this case; 5) Plaintiff's class consists of those women at CPI with claims of sexual harassment and/or sex discrimination between February 4, 1993, and the date of trial; 6) Plaintiff is required to send notice to the putative class members at the earliest possible time; 7) Plaintiff asserts a constitutional violation of her substantive due process right to access to the courts and that this right is clearly established by both Supreme Court and Sixth Circuit precedent. Consequently, this court denies both of Defendants' motions for reconsideration.

IT IS SO ORDERED.