**Susan BREMILLER, Plaintiff,**

v.

**CLEVELAND PSYCHIATRIC INSTITUTE, et al., Defendants.**

**No. 1:94CV1151.**

United States District Court, N.D. Ohio, Eastern Division.

Jan. 12, 1995.

Howard A. Schulman, Schulman, Schulman & Meros, Karen Marie Crist, Cleveland, OH, for plaintiff.

Franzetta D. Turner, Employment Law Section, Office of the Asst. Atty. Gen., Cleveland, OH, Robert L. Griffin, Mary Beth Foley, Office of the Atty. Gen., Employment Law Section, Columbus, OH, for defendants.

## MEMORANDUM AND ORDER

OLIVER, District Judge.

This memorandum and order addresses defendant's motion to dismiss plaintiff's complaint. Plaintiff filed this complaint against several defendants. These defendants include the Cleveland Psychiatric Institute ("CPI"), Michael Hogan, the Director of the Ohio Department of Mental Health in his individual capacity, Sandra Rahe the Acting Chief Executive Officer of CPI in her individual capacity, Douglas Aaron an employee of CPI and John Doe co-conspirators whose identities are unknown to the plaintiff. Plaintiff alleges various violations of employment law, civil rights law and pendent state law claims. More specifically, plaintiff alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq. for sex discrimination, creation of hostile work environment/sexual harassment and retaliatory discharge. Plaintiff also brings this action under of 42 U.S.C. §§ 1983 and 1985 for violations of the 5th and 14th Amendments to the United States Constitution. Finally, plaintiff asserts several state law claims including violation of O.R.C. § 4112 (the state anti-discrimination in employment statute), public policy retaliatory discharge, defamation and tortious interference with contract, intentional infliction of emotional distress, assault and battery, and false imprisonment.

## I. FACTS

Plaintiff's claims stem from her employment as a nurse at CPI. In that capacity, plaintiff asserts that male colleagues subjected her and other female staff members to continuous sexual harassment from the first day of her employment in August of 1991 until her termination in June of 1993. According to plaintiff, this harassment included, *inter alia*, verbal threats, physical intimidation, sexual jokes, and unwanted touching and groping. According to plaintiff, most of this harassment came from the male Thera-peutic Program Workers ("TPWs"), but also from the interim head of security Mr. David Sladewski and part-time police officers at CPI.

Plaintiff claims that nurses constantly reported this behavior to their supervisors and to Sandra Rahe the acting CEO for CPI, but no one ever took any action to stop the harassment. In fact, plaintiff contends that Sandra Rahe instructed Bonnie Ameche, the nurse educator, not to discuss sexual harassment during nurse orientation. Consequently, plaintiff alleges, CPI never addressed the issue, not even during plaintiff's EEO orientation.

Finally, just prior to her termination, on June 5, 1993, plaintiff alleges that defendant Aaron held her at gun point in a room at CPI for over an hour and a half and during that time he fondled her, exposed himself to her and masturbated in front of her. Plaintiff immediately reported this incident to the State Highway Patrol, whose jurisdiction included CPI. The next day, she filed a police report with the Cleveland Police Department. Finally, she reported the incident to her nurse supervisor and the personnel director at CPI. On June 7, 1993, plaintiff met with Sandra Rahe and Marie deBrossard to discuss the attack. At that time, Sandra Rahe terminated plaintiff on the basis that it was easier to terminate plaintiff, a non-union employee, than to terminate defendant Aaron, a union employee.

Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") against CPI on December 1, 1993. She received her right to sue letter on May 6, 1994. According to plaintiff, between March 29, 1994 and April 11, 1994, while the EEOC was conducting its investigation into plaintiff's complaint, defendants Hogan and Rahe conspired to terminate Ruth Spencer who maintained possession and control over the documents relevant to plaintiff's claims. Plaintiff alleges that upon terminating Ruth Spencer, defendants Hogan and Rahe further conspired to enter Ruth Spencer's office and removed and destroyed all documents relevant to plaintiff's complaint.

Plaintiff filed this lawsuit on June 3, 1994. Defendants filed a motion to dismiss plaintiff's complaint on August 4, 1994. Defendants raise several arguments in their motion to dismiss. First, CPI is a state agency and as such is entitled to immunity from suit under sections 1983 and 1985 by the Eleventh Amendment. Second, the individual Title VII claims against the state officials must be dismissed. Third, this court lacks jurisdiction over certain of plaintiff's Title VII claims which were untimely filed. Fourth, punitive damages under Title VII are not statutorily permissible against a government agency. Fifth, this court lacks subject matter jurisdiction over the state law claims brought against defendants Rahe, Aaron and Hogan. Sixth, the conspiracy cause of action must be dismissed. Seventh, the section 1983 claims against the individual defendants must be dismissed. Eighth, defendant Hogan is entitled to dismissal as no factual allegation was made against him in the complaint. Ninth, individual defendants are entitled to qualified immunity from damages for alleged violations of the Constitution. The court addresses each claim separately.

## II. LAW

A motion to dismiss may only be granted if it appears beyond doubt that plaintiff can prove no set of facts in support of her claim which would entitle her to relief. *Ang v. Procter and Gamble Co.*, 932 F.2d 540 (6th Cir.1991).

### A. A State Agency Is Entitled To Immunity From Suit Under Sections 1983 And 1985 By The Eleventh Amendment.

The Eleventh Amendment bars suits against a state by its own citizens. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). When an action is brought against a public agency or institution, and/or officials thereof, the application of the Eleventh Amendment turns on whether said agency or institution can be characterized as an arm or alter ego of the state, or whether it should be treated as a political subdivision of the state. *Mt. Healthy City School District Board of Education v. Doyle,*

429 U.S. 274, 280, 97 S.Ct. 568, 572–73, 50 L.Ed.2d 471 (1977). Municipalities, counties and other political subdivisions are not covered by the state's Eleventh Amendment immunity. *Id.* Therefore, the question here is whether CPI can be considered an "arm" or "alter ego" of the State of Ohio, entitled to the immunity afforded by the Eleventh Amendment, or whether it is merely a political subdivision which enjoys no such immunity.

In answering this question, the Sixth Circuit employs a nine-point analysis: (1) local law and decision defining the status and nature of the agency involved and its relation to the sovereign; (2) will the payment of judgment have to be made out of the state treasury; (3) whether the agency has the funds or the power to satisfy the judgment; (4) whether the agency is performing a governmental or proprietary function; (5) whether the agency has been separately incorporated; (6) the degree of autonomy over its operations; (7) whether it has the power to sue and be sued and to enter into contracts; (8) whether its property is immune from state taxation; and (9) whether the sovereign has immunized itself from responsibility for the agency's operations. *See Hall v. Medical College of Ohio at Toledo,* 742 F.2d 299 (6th Cir.1984).

The Ohio Constitution compels that "Institutions for the benefit of the insane ... shall always be fostered and supported by the state; and be subject to such regulations as may be prescribed by the general assembly." Ohio Const. art. VII, § 1. Accordingly, O.R.C. § 121.02(L) creates the Department of Mental Health ("DMH"), which is administered by the director of mental health. O.R.C. § 5119.02(A) requires that "the department of mental health shall maintain, operate, manage, and govern all state institutions for the care and treatment of mentally ill persons." *Id.* Furthermore, O.R.C. § 5119.03 states that "the department of mental health shall operate, and with the approval of the governor, designate the purpose of institutions ... and may change, with the approval of the governor, these designations when necessary." *Id.*

In addition to these statutes, other statutes vest control of DMH funds with the state treasury. For instance, O.R.C. § 5119.161 states "unless otherwise specifically provided by law, all moneys received by the department of mental health from the sale of goods and services ... shall be paid into the state treasury...." *Id.* In another example, O.R.C. § 5119.33 says, "the Treasurer of state shall have charge of all funds under the jurisdiction of the department of mental health and shall pay out the same only in accordance with this chapter." *Id.*

Finally, O.R.C. § 5119.30 declares that "the attorney general shall attend to all suits instituted on behalf of or against any institution under the jurisdiction of the department of mental health and the managing officer thereof...." *Id.*

These statutes as applied to CPI suggest that it is an "arm" or "alter ego" of the state as opposed to a political subdivision. The Ohio Constitution commands the state to provide mental health facilities, state statutes create a Department of Mental Health for this purpose and another state statute gives the DMH authority to create state institutions to serve this purpose. It appears that the state created CPI pursuant to its constitutional and statutory mandate.

Additionally, CPI maintains no control over its funds. So, CPI must satisfy any adverse judgment against it out of state funds because it possesses neither the funds nor the power to satisfy such a judgment as an entity separate from the state. As expressed by the constitutional and statutory provisions, CPI serves a governmental rather than a proprietary function and as such has not been separately incorporated. Although parties can sue CPI in its own name, the state, through the Attorney General's office, conducts its defense and exercises control over CPI's ability to sue. Finally, no statute exists which immunizes the state from the agency's operations or taxes its property.

■ Consequently, for the foregoing reasons, the court finds that CPI is an "arm" or "alter ego" of the state entitled to Eleventh Amendment protection from plaintiff's federal constitutional *and* state law claims. However, plaintiff also requests injunctive relief

and the Eleventh Amendment presents no bar to such prospective relief when state officials are sued in their official capacity for violation of constitutional rights. *See, e.g., Edelman v. Jordan,* 415 U.S. 651, 667–68, 94 S.Ct. 1347, 1357–58, 39 L.Ed.2d 662 (1974); *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 102, 104 S.Ct. 900, 909, 79 L.Ed.2d 67 (1984); *Ex Parte Young,* 209 U.S. 123, 150, 28 S.Ct. 441, 450, 52 L.Ed. 714 (1908).

■ *Ex Parte Young* recognized that expenditure of state funds may be required by a prospective court decree without violating the Eleventh Amendment, even if the relief has an ancillary effect on the state treasury. The Supreme Court held that an injunction against a state official acting in an unconstitutional manner is not barred by the Eleventh Amendment because for the purpose of that Amendment the official so acting no longer represents the state. Thus, while an action for damages against CPI and the individual defendants in their official capacities is barred by the Eleventh Amendment, immunity does not extend to suits for prospective relief.

## B. Plaintiff Cannot Hold The Individual Defendants Personally Liable Under Title VII.

■ There exists a split in the circuits regarding whether or not individual agents may be personally liable for discriminatory acts they commit on the job under Title VII. *See, e.g., Miller v. Maxwell's International, Inc.,* 991 F.2d 583, 587–88 (9th Cir.1993) ("the term 'employer' includes the employer's 'agent' ... [but] the obvious purpose of this agent provision was to incorporate respondeat superior liability into the statute"); *cf. Steele v. Offshore Shipbuilding, Inc.,* 867 F.2d 1311, 1316 n. 1 (11th Cir.1989) (supervisor may be "directly liable for his actions that violate Title VII").

The Sixth Circuit has not ruled in this area. However, in *York v. Tennessee Crushed Stone Ass'n,* 684 F.2d 360, 362 (6th Cir.1982), the Sixth Circuit defined "agent" as "a supervisory or managerial employee to whom employment decisions have been dele-

gated by the employer." The court did not directly address agent liability under Title VII. But, it did say that the supervisory employee could have been "sued in his official capacity as executive director, i.e., agent, of the [defendant] association" provided that it was an "employer" under Title VII. In addition to the facts of that case, the court gave examples of agents sued in their official capacity as representatives of the employer: a college president who acts as agent for the board of trustees, a superintendent of a school district as agent of the district, and a manager of an Employment Security Commission office as agent of the state commission. These examples suggest that an agent, in his official capacity, may be liable under Title VII only for the purpose of imposing respondeat superior liability on the employer.

This suggestion is consistent with two recent rulings from district courts within the Sixth Circuit. *See Wilson v. Wayne County*, 856 F.Supp. 1254 (M.D.Tenn.1994); *see also Lowry v. Clark*, 843 F.Supp. 228 (E.D.Ky. 1994). In *Wilson*, the court found that the "greatest weight of recent authority concludes that there is no individual liability under Title VII." *Wilson, supra*, 856 F.Supp. at 1261 (citations omitted). The authorities cited by the *Wilson* court so held by distinguishing between a defendant's individual and official capacity. *Id.* The significance of this distinction lies in the theory that a defendant may not be sued in his individual capacity under Title VII, but may be sued in his official capacity for purposes of imposing respondeat superior liability on the employer. Consequently, the Wilson court concluded that "Title VII does not permit suits against individual defendants in their 'individual capacities'." *Id.* at 1265. In *Lowry*, the court adopted a similar holding, stating that "this Court finds that the analysis of *Miller* is quite sound and adopts its holding that the 'agent' provision in the statutory definition of 'employer' only ensures that employers cannot escape respondeat superior liability." *Lowry, supra*, 843 F.Supp. at 231.

From the foregoing, this court concludes that plaintiff may not sue the individual defendants for purposes of imposing personal liability on them under Title VII.[1]

## C. This Court Has Jurisdiction Over Plaintiff's Title VII Claims.

In *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982), the Court articulated the "continuing violation" theory. The court held that "where a plaintiff ... challenges not just one incident of [unlawful] conduct ... but an unlawful practice continues into the limitations period, the complaint is timely when it is filed within 180 days of the last asserted occurrence of that practice." *Id.* at 380–81, 102 S.Ct. at 1125. In *Held v. Gulf Oil Co.*, 684 F.2d 427 (6th Cir.1982), the court applied the "continuing violation" theory in a Title VII sex discrimination case, which culminated in a constructive discharge. The court found that discriminatory acts made by the employer and various employees occurred throughout the term of plaintiff's employment and stated:

> If the discriminatory acts commenced prior to the 180 day period and there was a continuous pattern of discrimination that continued into the 180 day period, plaintiff may still maintain her action [on all claims] even though single discriminatory acts prior to the 180 day period are barred.

*Id.* at 430. If subsequent identifiable acts of discrimination occurred within the critical time period and were related to the time-barred incident, the bar does not apply. *Id.* The Sixth Circuit recently reaffirmed the "continuing violation" doctrine in *Hull v. Cuyahoga Valley Board of Education*, 926 F.2d 505 (6th Cir.1991).

Plaintiff filed her EEOC complaint on December 1, 1993. So, her complaint regarding the June 5–7, 1993 actions by defendants are timely. Since one of the alleged incidents fell within the 180 day period for filing an EEOC complaint, then under the "continuing

1. Since plaintiff named CPI as a defendant, the court need not decide whether or not she could sue the defendants in their official capacities for the purpose of imposing respondeat superior liability on CPI. Consequently, the court need not decide the issue of whether or not there existed an identity of interest between CPI and the individual defendants for purposes of naming the individual defendants in this complaint where they were not named in the EEOC filing.

violation" doctrine this court has jurisdiction over all of plaintiff's Title VII claims because they are construed as timely filed.

### D. Punitive Damages Under Title VII Are Not Statutorily Permissible Against A Government Agency.

Since this court finds that CPI qualifies as a state government agency, neither party disputes that 42 U.S.C. § 1981a.(b)(1) prohibits punitive damages against it.

### E. This Court Lacks Subject Matter Jurisdiction Over The State Law Claims Brought Against Defendants Rahe, Aaron And Hogan.

■ Federal District Courts do not possess jurisdiction over state law causes of action against state employees without a finding concerning the applicability of state law immunity by the Ohio Court of Claims. *See* O.R.C. § 2743.02(F); *see also, Haynes v. Marshall,* 887 F.2d 700, 704–05 (6th Cir. 1989). Plaintiff requests this court to stay her state law claims pending a decision by the Ohio Court of Claims rather than dismiss them. The court declines plaintiff's request because it lacks subject matter jurisdiction over the claims and therefore, cannot stay claims which are not properly before it. *See Parks v. Wilkins,* 716 F.Supp. 1028, 1031 (S.D.Ohio 1988).

### F. Plaintiff May Properly Maintain An Action Against The Defendants Under 42 U.S.C. § 1985.

■ The defendants contend that plaintiff cannot maintain an action under section 1985(3) because of the "intracorporate conspiracy" doctrine. This doctrine asserts that "if all of the defendants are members of the same collective entity, there are not two separate people to form a conspiracy." *Hull v. Cuyahoga Valley Board of Education,* 926 F.2d 505, 510 (6th Cir.1991). The Sixth Circuit recently created an exception to this doctrine. The court said, "when employees act outside the course of their employment, they and the corporation may form a conspiracy under 42 U.S.C. § 1985(3)." *Johnson v.* *Hills & Dales Gen. Hosp., et al.,* 40 F.3d 837 (6th Cir.1994).

Taking the plaintiff's allegations as true, the court finds that plaintiff pleads facts sufficient to show that defendants acted outside of their scope of employment. Typically actions such as managerial decisions and the implementation or ratification thereof are protected within the scope of employment. Yet, if the decision was part of a conspiratorial plan to limit access to documents, related to plaintiff's complaint, to the co-conspirators and then those documents are destroyed by the co-conspirators, those activities fall outside the scope of employment and thereby provide an exception to the intracorporate conspiracy doctrine.

■ Defendants argue, also, that plaintiff's claims do not amount to more than mere Title VII allegations and as such, plaintiff may not use section 1985(3) to pursue those claims. *See* Defendants' Reply to Plaintiff's Opposition To Defendants' Motion to Dismiss, at 7. For support, defendants rely on *Great American Federal Savings & Loan Association v. Novotny,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979). However, defendants read *Novotny* too broadly. In *Novotny,* a male officer of a savings and loan institution brought suit under section 1985(3), alleging that he was fired because he had supported female employees in their efforts to end sex discrimination. The Court noted that in contrast to Title VII, section 1985(3) is purely a remedial statute that provides a cause of action when "some otherwise defined federal right—to equal protection of the laws or equal privileges and immunities under the laws—is breached by a conspiracy...." *Id.* at 376, 99 S.Ct. at 2351. Mr. Novotny claimed a violation of a right created by Title VII. The Court determined, therefore, that the case did not involve a right "independent" of Title VII, and held that plaintiff could not invoke section 1985(3) to redress a violation of Title VII. *Id.* at 378, 99 S.Ct. at 2352.

Here, however, plaintiff has asserted a right *not* created by Title VII. She asserts her equal protection clause right to be free

from sex based governmental discrimination.[2] The genesis of this right is *Reed v. Reed,* 404 U.S. 71, 75, 92 S.Ct. 251, 253, 30 L.Ed.2d 225 (1971). Consequently, plaintiff's sex discrimination claim was created by the Constitution rather than Title VII. It follows that *Novotny* does not mandate dismissal of plaintiff's section 1985(3) claim. Furthermore, plaintiff's claim alleges that the conspiracy is based on her membership in the class of women sexually harassed at CPI. To the extent that women are a protected class under the equal protection clause, this allegation is sufficient to meet the class-based animus requirement of section 1985(3).

## G. Plaintiff May Maintain An Action Against Defendants Under 42 U.S.C. § 1983.

■ Similar to the reasoning under section 1985, in *Day v. Wayne County Board of Auditors,* 749 F.2d 1199 (6th Cir.1984), the court held that "an employee may sue her public employer under both Title VII and § 1983 when the § 1983 violation rests on a claim of infringement of rights guaranteed by the Constitution." *Id.* at 1205.

Despite defendants protestations to the contrary, plaintiff's allegations of sexual discrimination and harassment under section 1983, as under section 1985(3), sufficiently state facts to support and independent claim under the equal protection clause of the Fourteenth Amendment to the United States Constitution. Therefore, plaintiff may maintain her section 1983 action against the defendants. Moreover, although there is a two year statute of limitations for section 1983 actions, the court finds that plaintiff may maintain her claims prior to June 3, 1992, under the "continuing violations" doctrine. *See, e.g., Hull v. Cuyahoga Valley Board of Education,* 926 F.2d 505 (6th Cir.1991).

## H. Plaintiff States Allegations Against Defendant Hogan Sufficient To Survive A Motion To Dismiss.

Contrary to defendants contentions, plaintiff asserts facts against defendant Hogan in several paragraphs of the complaint, by referring to the "defendants" as a whole. Plaintiff's claims survive a motion to dismiss unless it appears beyond doubt that she can prove no set of facts in support of her claim which would entitle her to relief. *Ang v. Procter & Gamble,* 932 F.2d 540 (6th Cir. 1991). The court finds that plaintiff has plead enough facts against the "defendants" which includes Hogan, that it does not appear beyond doubt that plaintiff can prove no set of facts in support of her claim which would entitle her to relief.

■ Furthermore, the complaint need not set down in detail all particulars of plaintiff's claim against the defendant; the function of the complaint is to afford defendant fair notice of what plaintiff's claim is and grounds upon which it rests. *See Haffey v. Taft,* 803 F.Supp. 121 (S.D.Ohio 1992). Judging from the complaint and defendants detailed response thereto, especially those areas directed towards the defense of Hogan, defendant Hogan has received fair notice of what plaintiff's claims are and the grounds upon which they rest.

## I. Defendants Are Not Entitled To Qualified Immunity.

■ The doctrine of qualified immunity may operate to protect state officials sued as individuals in civil rights actions. That is, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see also, Peek v. Mitchell,* 419 F.2d 575, 578 (6th Cir.1970). "The relevant inquiry focuses on whether a reasonable official in the defendant's position could have believed his conduct to be lawful, considering the state of the law as it existed when the defendant took his challenged actions." *Poe v. Haydon,* 853

---

**2.** The equal protection clause is found in the Fourteenth Amendment to the United States Constitution which provides that a state may not "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1.

F.2d 418, 423 (6th Cir.1988), *cert. denied*, 488 U.S. 1007, 109 S.Ct. 788, 102 L.Ed.2d 780 (1989), *quoted in Henry v. Metropolitan Sewer District*, 922 F.2d 332, 339 (6th Cir. 1990).

The Sixth Circuit has stated:

[t]he right in question ... cannot be simply a generalized right, like the right to due process. It must be clearly established in a "particularized" sense, so that "the contours of the right" are clear enough for any reasonable official in the defendants' position to know that what the official is doing violates that right. This particularity requirement does not mean that the very action in question has been held unlawful; it does mean, though, that in light of the preexisting law, the illegality of the action must be apparent.

*Danese v. Asman*, 875 F.2d 1239, 1242 (6th Cir.1989), cert. denied, 494 U.S. 1027, 110 S.Ct. 1473, 108 L.Ed.2d 610 (1990) (citations omitted).

■ To determine whether plaintiff's due process or equal protection rights were clearly established, the court should look to "federal constitutional, statutory or caselaw existing at the time." *Dominque v. Telb*, 831 F.2d 673, 677 (6th Cir.1987). The court should examine "the decisions of the Supreme Court and the courts of this circuit." *Poe, supra*, 853 F.2d at 424 (citation omitted).

Once defendant raises the qualified immunity defense, the plaintiff must produce additional facts or allegations demonstrating that her constitutional rights were violated and "that these rights were so clearly established that any officer in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct." *Dominque, supra*, 831 F.2d at 676.

### a. *Plaintiff's Due Process Claims*

■ The Due Process Clause of the Fourteenth Amendment protects against the deprivation of life, liberty and property without due process of law. U.S. Const. amend. XIV. It is not possible, from the pleadings, to discern the status of the employment rela-

tionship between plaintiff and CPI. Nonetheless, Sixth Circuit caselaw makes clear that public employees enjoy no substantive due process right in public employment. *See, e.g., Sutton v. Cleveland Board of Education*, 958 F.2d 1339, 1351 (6th Cir.1992) (holding that a claim of improper discharge of a public employee cannot be brought as a violation of substantive due process). Consequently, the court will restrict its focus to procedural due process.

■ To establish a due process violation, a plaintiff must prove that he was deprived of a property or liberty interest by a party acting under color of state law without some sort of hearing. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). "In this Circuit, ... a § 1983 plaintiff may prevail on a procedural due process claim by either (1) demonstrating that he is deprived of property as a result of established state procedure that itself violates due process rights; or (2) by proving that the defendants deprived him of property pursuant to a 'random and unauthorized act' *and* that available state remedies would not adequately compensate for the loss." *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir.1991) (citations omitted).

■ A section 1983 plaintiff must hold a sufficient property interest under state law in continued employment before she can invoke protections of procedural due process; the claimed property right may be shown by evidence of statute, policy, practice, regulation, guideline, written contract, or contract implied from mutually explicit understanding of the parties. *See Pesek v. City of Brunswick*, 794 F.Supp. 768, 779 (N.D.Ohio 1992) (citing *Duncan v. City of Oneida*, 735 F.2d 998, 1000 (6th Cir.1984)). Plaintiff fails to meet this standard in that she offers no evidentiary support for her claimed property right. Consequently, the court finds plaintiff possessed no property right in continued employment with CPI.

Even if plaintiff possessed a property right in continued employment with CPI, she fails to demonstrate the inadequacy of state remedies, *i.e.*, a lawsuit in the Ohio Court of Claims, in compensating her for her losses.

See, e.g., Mackey v. Cleveland State University, 837 F.Supp. 1396, 1406 (N.D.Ohio 1993) ("unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available," quoting Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 3204, 82 L.Ed.2d 393 (1984)). As a result, this court finds that defendants are entitled to qualified immunity on plaintiff's procedural due process claim.

▪ Plaintiff alleges, also, that defendant Aaron deprived her of her liberty without due process of law. Similar to the previous analysis, where a plaintiff alleges a liberty or property due process violation, plaintiff must also demonstrate why the state provided post-deprivation remedies are inadequate. See Wilson v. Beebe, 770 F.2d 578, 584 (6th Cir.1985). To the extent that plaintiff failed to so demonstrate, defendants are entitled to qualified immunity on this claim.

▪ Plaintiff contends, also, that defendants Rahe and Hogan deprived her of her due process rights by conspiring to destroy documents relevant to plaintiff's claims. Access to the courts is a substantive due process right. See Morello v. James, 810 F.2d 344 (2d Cir.1987) (citing Johnson v. Avery, 393 U.S. 483, 485, 89 S.Ct. 747, 748–49, 21 L.Ed.2d 718 (1969)). A section 1983 case can be maintained for a substantive due process violation where the state actor's conduct shocks the conscience. Under these circumstances, the adequacy of the state remedy is irrelevant. See Haag v. Cuyahoga County, 619 F.Supp. 262 (N.D.Ohio 1985) (citing Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) and Wilson v. Beebe, 770 F.2d 578 (6th Cir.1985)).

Taking plaintiff's allegations as true, the court finds defendants behavior shocking to the conscience. Destroying documents relevant to plaintiff's claims during the pendency of an EEOC investigation impedes and obstructs plaintiff's access to the courts in violation of her substantive due process right thereto. These facts are not unlike the facts in Morello v. James, 810 F.2d 344 (2d Cir. 1987). In that case, prison officials intentionally destroyed a prisoner's legal briefs and records thereby preventing the prisoner from perfecting his appeal. The court held that access to the courts is protected by substantive due process and as such plaintiff need not allege the inadequacy of or otherwise pursue available state post-deprivation remedies. Id. at 347–48.

Similarly, this court concludes that plaintiff states a substantive due process violation and may proceed thereon in federal district court. Thus, defendants are not entitled to immunity on plaintiff's substantive due process claim.

b. *Plaintiff's Equal Protection Claims*

▪ Finally, plaintiff maintains that defendants Aaron and Rahe deprived her of her right to public employment free from sexual harassment and that defendant Rahe did so by her active participation in the creation of the "hostile environment."

The Fourteenth Amendment and Title VII have granted public sector employees independent rights to be free of employment discrimination. See, e.g., Day v. Wayne County Board of Auditors, 749 F.2d 1199 (6th Cir.1984); see also, Poe v. Haydon, 853 F.2d 418 (6th Cir.1988). As such, a plaintiff may sue her public employer for violations of the Fourteenth Amendment through section 1983. Id. at 1205. However, to prevail under section 1983, plaintiff must demonstrate that the law was clearly established at the time defendants took the actions of which plaintiff complains and that there was purposeful discrimination. See Poe v. Haydon, supra, 853 F.2d at 428, 430–32.

▪ The equal protection clause of the Fourteenth Amendment clearly prohibits sexual harassment in the workplace. See Poe, supra, 853 F.2d at 429. The court finds that plaintiff alleges sufficient facts to demonstrate that defendant Aaron violated her clearly established right to be free from sexual harassment. The only issue is whether for not defendant Aaron acted with discriminatory purpose. The Supreme Court has defined "discriminatory purpose" in the following way: "it implies that the decisionmaker ... selected or reaffirmed a particular

course of action at least in part 'because of,' and not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Mass. v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979).

Plaintiff alleges defendant Aaron continually harassed her by, *inter alia,* repeatedly asking for sex, stalking her and finally holding her at gun point for one and one-half hours during which he fondled her and masturbated in front of her. Applying the *Feeney* definition of purposeful discrimination to defendant Aaron's alleged actions, the court finds that he acted with discriminatory purpose. Defendant Aaron chose this course of action "because of," and not merely "in spite of" its effects on plaintiff, who as a woman, is a member of an identifiable group. Therefore, defendant Aaron is not entitled to immunity from plaintiff's claim.

In order to impose supervisory liability under section 1983 on defendant Rahe, plaintiff must demonstrate that defendant Rahe "either encouraged the specific incident or in some other way directly participated in it." *Hays v. Jefferson County,* 668 F.2d 869 (6th Cir.), *cert. denied,* 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982). At a minimum, a section 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate(s). *See Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir.), *cert. denied,* 469 U.S. 845, 105 S.Ct. 156, 83 L.Ed.2d 93 (1984).

Plaintiff alleges that many incidents of sexual harassment were reported to defendant Rahe. But, instead of addressing these complaints, defendant Rahe instructed Bonnie Ameche not to discuss sexual harassment during nurse orientation. Finally, plaintiff alleges that after her assault, defendant Rahe thought it easier to fire plaintiff than to fire plaintiff's attacker, defendant Aaron. The court finds that these allegations state sufficient facts to show that, at a minimum, defendant Rahe implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate. Furthermore, the court finds these allegations sufficient to show purposeful dis-

crimination under *Feeney.* Consequently, defendant Rahe is not immune from plaintiff's claims.

## III. CONCLUSION

For the foregoing reasons, the court finds the following: (1) CPI is a state agency entitled to immunity from suit under sections 1983 and 1985 by the Eleventh Amendment for money damages but not for prospective relief; (2) Plaintiff cannot hold the individual defendants personally liable under Title VII; (3) This court has jurisdiction over all of the plaintiff's Title VII claims; (4) Punitive damages under Title VII are not statutorily permitted against a government agency; (5) This court lacks subject matter jurisdiction over state law claims brought against defendants; (6) Plaintiff may properly maintain an action against all of the defendants, except CPI, under section 1983; (7) Plaintiff may properly maintain an action against defendants under section 1985(3); (8) Plaintiff states allegations against defendant Hogan sufficient to survive a motion to dismiss; (9) Defendants are entitled to qualified immunity as to plaintiff's procedural due process claims, but not as to her equal protection claims or substantive due process claim.

The parties addressed the issue of whether plaintiff's motion to certify a class should be denied as part of this motion to dismiss. The parties also fully briefed the issue apart from this 12(b)(6) motion. The court will address the class certification issue in a separate memorandum and order.

IT IS SO ORDERED.

### MEMORANDUM AND ORDER

This memorandum and order addresses plaintiff's motion to bring this case as a class action. Plaintiff filed this complaint against several defendants. These defendants include the Cleveland Psychiatric Institute ("CPI"), Michael Hogan, the Director of the Ohio Department of Mental Health in his individual capacity, Sandra Rahe the Acting Chief Executive Officer of CPI in her individual capacity, Douglas Aaron an employee of CPI and John Doe co-conspirators whose identities are unknown to the plaintiff.

Plaintiff alleges various violations of employment law, civil rights law and pendant state law claims. More specifically, plaintiff alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq. for sex discrimination, creation of hostile work environment/sexual harassment and retaliatory discharge. Plaintiff also brings this action under 42 U.S.C. §§ 1983 and 1985 for violations of the 5th and 14th Amendments to the United States Constitution. Finally, plaintiff asserts several state law claims including violation of O.R.C. § 4112 (the state anti-discrimination in employment statute), public policy retaliatory discharge, defamation and tortious interference with contract, intentional infliction of emotional distress, assault and battery, and false imprisonment.

## I. FACTS

Plaintiff's claims stem from her employment as a nurse at CPI. In that capacity, plaintiff asserts that male colleagues subjected her and other female staff members to continuous sexual harassment from the first day of her employment in August of 1991 until her termination in June of 1993. According to plaintiff, this harassment included, *inter alia*, verbal threats, physical intimidation, sexual jokes, and unwanted touching and groping. According to plaintiff, most of this harassment came from the male Therapeutic Program Workers ("TPWs"), but also from the interim head of security Mr. David Sladewski and part-time police officers at CPI.

Plaintiff claims that nurses constantly reported this behavior to their supervisors and to Sandra Rahe the acting CEO for CPI, but no one ever took any action to stop the harassment. In fact, plaintiff contends that Sandra Rahe instructed Bonnie Ameche, the nurse educator, not to discuss sexual harassment during nurse orientation. Consequently, plaintiff alleges, CPI never addressed the issue, not even during plaintiff's EEO orientation.

Finally, just prior to her termination, on June 5, 1993, plaintiff alleges that defendant Aaron held her at gun point in a room at CPI for over an hour and a half and during that time he fondled her, exposed himself to her and masturbated in front of her. Plaintiff immediately reported this incident to the State Highway Patrol, whose jurisdiction included CPI. The next day, she filed a police report with the Cleveland Police Department. Finally, she reported the incident to her nurse supervisor and the personnel director at CPI. On June 7, 1993, plaintiff met with Sandra Rahe and Marie deBrossard to discuss the attack. At that time, Sandra Rahe terminated plaintiff on the basis that it was easier to terminate plaintiff, a non-union employee, than to terminate defendant Aaron, a union employee.

Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") against CPI on December 1, 1993. She received her right to sue letter on May 6, 1994. According to plaintiff, between March 29, 1994 and April 11, 1994, while the EEOC was conducting its investigation into plaintiff's complaint, defendants Hogan and Rahe conspired to terminate Ruth Spencer who maintained possession and control over the documents relevant to plaintiff's claims. Plaintiff alleges that upon terminating Ruth Spencer, defendants Hogan and Rahe further conspired to enter Ruth Spencer's office and removed and destroyed all documents relevant to plaintiff's complaint.

Plaintiff filed this lawsuit on June 3, 1994. Defendants filed a motion to dismiss plaintiff's complaint on August 4, 1994. Defendant moved for dismissal pursuant to Federal of Civil Procedure 12(b)(6). This court denied defendant's motion as to plaintiff's Title VII claim and claims brought pursuant to sections 1983 and 1985. Plaintiff now moves this court to certify this action as a class action on behalf of past, present and future female employees of CPI. *See* Plaintiff's Motion for Class Action, at 1.

## II. LAW

### A. Jurisdictional Requirements

To bring a class action under Title VII, plaintiff must meet the requirements of Title VII and the requirements of Federal of Civil Procedure 23. *See, e.g., General Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). Before an ac-

tion can brought under Title VII, two jurisdictional requirements must be satisfied. First, the plaintiff must have filed a timely charge with the EEOC. Second, the plaintiff must have received a right to sue letter from the EEOC and acted upon it to file suit within 90 days. *See, e.g., Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974). When a class action is brought under Title VII, not all class members need file EEOC charges before they can share in any class relief. *See, e.g., Jones v. Firestone Tire and Rubber Co., Inc.,* 977 F.2d 527 (11th Cir.1992). This is not to say, however, that a class action can revive Title VII claims which were no longer viable when a class member first filed a complaint with the EEOC. *See Christman v. American Cyanamid Co.,* 92 F.R.D. 441 (N.D.W.Va.1981).

In a case such as this, plaintiff must file her claim within three hundred days. *See* 42 U.S.C. § 2000e–5(e). "However, if the practice complained of is part of a continuously maintained illegal employment practice, rather than a discrete an isolated act ... relief for injuries sustained even before the beginning of the limitations period is appropriate." *Selzer v. Board of Education of City of New York,* 112 F.R.D. 176, 181 (S.D.N.Y.1986), quoting, *Acha v. Beame,* 570 F.2d 57, 65 (2d Cir.1978).

Plaintiff filed her EEOC complaint, timely, on December 1, 1993. She received her right to sue letter on May 6, 1994. Therefore, plaintiff meets the first two tests for bringing a Title VII class action. Since plaintiff filed an EEOC complaint, timely, no other class members with valid claims need file an EEOC complaint. The putative class may consist of those women at CPI with claims of sexual harassment and discrimination which accrued between February 4, 1993, and December 1, 1993. Furthermore, any class member who experienced a continuing pattern of discrimination is entitled to litigate those acts of sexual harassment which occurred prior to February 4, 1993, under the "continuing violation" doctrine. See, e.g., *Christman v. American Cyanamid Co.,* 92 F.R.D. 441, 448 n. 20 (N.D.W.Va.1981) ("Where, however, the defendant has engaged in a continuous policy of discrimination ... if the charge has been filed no later than 300 days after the last act by the defendant pursuant to its policy, the plaintiff may recover for earlier acts of discrimination as well ...")

## B. Class Action Requirements

Federal Rule of Civil Procedure 23 governs class actions.[1] In *Senter v. General Motors Corp.,* 532 F.2d 511 (6th Cir.1976), the court stated that "The burden is on the party seeking to utilize the class action de-

1. The Rule reads in pertinent part as follows:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

vice, to establish his right to do so. As a preliminary matter, he must satisfy all four of the prerequisites contained in Rule 23(a) and then demonstrate that the class he seeks to represent falls within one of the subcategories of Rule 23(b)." *Id.* at 522.

### C. Plaintiff Satisfies The Requirements Established In Rule 23(a).

#### a. *"Numerosity"*

Impracticability of joinder is not determined according to a strict numerical test, but upon the circumstances surrounding the case. *See Senter, supra,* at 524 n. 24. The circumstances of this case suggest that the numerosity requirement is met. The putative class numbers at least the 260 women currently employed by CPI, since plaintiff alleges that they are all subject to harassment and discrimination solely because of gender. Consequently, not certifying the class could lead to a multiplicity of lawsuits which could produce inconsistent results. Judicial economy dictates that it is better to hear one lawsuit rather than 260 lawsuits alleging the same claims over and over again. Financially, it would be more economical to litigate one lawsuit than 260. Furthermore, plaintiff's allegations, taken as true for the purposes of this memorandum and order only, suggest that the atmosphere at CPI may intimidate many of the members of the putative class into not coming forward individually. Finally, there is a request for prospective relief that will cover all current and future female employees at CPI. Consequently, this court finds that the circumstances dictate that plaintiff satisfies the "numerosity" requirement.

#### b. *"Commonality"*

The Supreme Court has held that "class relief is peculiarly appropriate when the issues involved are common to the class as a whole and when they turn on questions of law applicable in the same manner to each member of the class." *General Telephone Co. v. Falcon,* 457 U.S. 147, 155, 102 S.Ct. 2364, 2369, 72 L.Ed.2d 740 (1982). To satisfy the commonality requirement, the Sixth Circuit has held that "factual identity between the plaintiff's claims and those of the class he

seeks to represent is not necessary." *Senter,* 532 F.2d at 524. It is enough that "discrimination had been practiced across the board." *Id.*

Plaintiff clearly alleges that discrimination has been practiced across the board. She recites numerous incidents involving the harassment of female employees of CPI by their male colleagues. These issues are common to the class as a whole and their resolution turns on questions of law applicable in the same manner to each member of the class, namely the Title VII and section 1983 claims that survived defendants motion to dismiss. Furthermore, although plaintiff has additional claims that appear to apply only to her, "the fact that some individual issues coexist with common issues does not prevent the action from meeting the prerequisite of class action rule that common questions be present." [get case cite 97 FRD 653]. The court finds that plaintiff meets the commonality requirement of Rule 23(a)(2).

#### c. *"Typicality"*

In *Falcon, supra,* 457 U.S. at 157–58, n. 13, 102 S.Ct. at 2370–71, n. 13, the Supreme Court stated that "[t]he commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." According to the Sixth Circuit, "[t]o be typical, a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law." *Senter, supra,* 532 F.2d at 525, n. 31.

Again, taking plaintiff's facts as true for purposes of this motion, plaintiff and the putative class members are similarly situated. As female employees of CPI, they were all subjected to physical, verbal and other forms of harassment based solely on their gender. Many reported these incidents and were greeted with non-action by the CPI administration and thereby forced to con-

front retaliation from their male colleagues. As a result, the court finds that plaintiff satisfies the typicality requirement of Rule 23(a)(3).

### d. "Representativeness"

The Sixth Circuit requires plaintiffs to satisfy two criteria in order to demonstrate adequate representation of the class: (1) the representative must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel. *See Senter v. General Motors Corp., supra*, 532 F.2d at 524–25.

From the facts alleged in plaintiff's complaint, it appears that plaintiff and the unnamed members of the class share common interests in eliminating the pervasive sexual harassment to which their male colleagues perpetually subject them. Plaintiff's and the putative class' interests diverge only in that those putative class members currently employed at CPI presumably want to remain employed there. Whereas, plaintiff, having been terminated, does not share that interest. Yet, the lack of shared interest in this one regard does not prevent plaintiff from fairly and adequately representing the putative class. Furthermore, plaintiff's advocacy to date demonstrates a vigorous prosecution of the action on behalf of the class. Finally, as detailed in her brief, plaintiff's counsel appears qualified. As a result, the court finds that plaintiff meets the representativeness requirement of Rule 23(a)(4).

### D. Plaintiff Satisfies The Requirements Established In Rule 23(b).

Plaintiff meets the requirements of Rule 23(b)(1)(A) and (B). The prosecution of individual actions could result in inconsistent or varying judgments with respect to members of the class which could establish incompatible standards of conduct for the defendants in this case. Moreover, given that the class members are similarly situated, adjudications as to one would as a practical matter be dispositive of the interests of the others.

Plaintiff also meets the requirements of Rule 23(b)(2). The plaintiff alleges that the defendants acted the same way towards all of the members of the class, *i.e.*, they were all subject to sexual harassment and the CPI administration ignored their complaints regarding this harassment. The class wants, in addition to damages, prospective injunctive relief prohibiting any further harassment. In *Alexander v. Aero Lodge No. 735, Intern. Ass'n, Etc.*, 565 F.2d 1364 (6th Cir.1977), the court stated "Title VII actions alleging class wide discrimination are particularly well-suited to 23(b)(2) treatment since 'the common claim is susceptible to a single proof and subject to a single injunctive remedy.' A request for back pay does not preclude certification under that subdivision." Id. at 1372 (quoting *Senter v. General Motors Corp., supra*, 532 F.2d at 525; citing *Franks v. Bowman Transportation Co.*, 424 U.S. 747, 751, 755, 96 S.Ct. 1251, 1257, 1259, 47 L.Ed.2d 444 (1976)).

Finally, plaintiff meets the requirements of Rule 23(b)(3). The court concludes that questions of law and fact common to the members of the class predominate over any questions affecting only individual members and that the class action is the most appropriate vehicle by which to fairly and efficiently adjudicate this controversy. First, the court finds that class members have not expressed the desire to have individual control over the litigation by filing separate actions. In fact, another nurse filed a sexual harassment complaint against CPI and she is represented by plaintiff's counsel in this matter and has also requested class certification. Second, with the exception of the aforementioned case, there exists no other litigation concerning this controversy and the plaintiff in that case is represented by the plaintiff's counsel in this case and also has requested a class action. Third, this court presents a desirable venue in which to litigate this controversy because the putative class and the defendants reside within the court's jurisdiction. Finally, the difficulties in managing this class action do not rise to the level of preventing class certification.

### III. CONCLUSION

For the foregoing reasons, the court finds that plaintiff meets the requirements of Fed-

eral Rule of Civil Procedure 23(a) and (b) and therefore, the court hereby certifies this controversy as a class action.

IT IS SO ORDERED.